BISSELL *against* KIP.

THIS was an action of *debt*, against the defendant, as sheriff of the county of *Oneida*, for the escape of *Abel Brigham*, charged in execution, at the suit of the plaintiff.

The declaration stated a judgment in favour of the plaintiff against *Brigham*, of *November* term, 1808, for 5,403 dollars and 77 cents, damages, and 37 dollars and 59 cents, costs, and that a *ca. sa.* was issued thereon, tested 26th *November*, 1808, commanding the sheriff of *Oneida* to have the body of *Brigham*, before, &c. at *Albany*, on the 18th of *February*, 1809, to satisfy, &c. The execution was delivered to the defendant, on the 10th of *December*, 1808. On the same day he arrested *Brigham*. The escape was alleged to have been on the 16th of *February*, 1809.

The defendant pleaded *seven pleas :*

1. *Nil debet.*

2. That *Brigham*, on the 16th of *February*, 1809, without his knowledge or consent, and against his will, escaped ; and that the defendant made fresh pursuit, and retook him before suit brought ; and that he has since remained, and still remains, a faithful prisoner, &c.

*Marginal note:* Where a defendant in execution, and admitted to the liberties of the gaol, walked beyond the limits, knowingly and voluntarily, on the pretence of avoiding a bank of snow, which obstructed his usual walk, it was held, that the cause assigned did not justify a departure from the limits, and that it was an escape, for which the sheriff was liable.

Where the liberties of a gaol were not defined by *visible* marks or boundaries, and the prisoner went beyond them, into a building which was supposed to be within the limits, and staid an hour, and then returned ; this was held to be an *escape*, for which the sheriff was liable. That the limits were vaguely defined, does not excuse or justify the escape ; for the sheriff is not bound to grant the liberties, on bail, until they are defined by *visible* bounds, according to the direction of the statute.

Where, in an action against the sheriff for an escape, he pleaded, that the prisoner inadvertently, and without any intention to escape, went into an office, sixteen feet beyond the liberties, and returned in one hour, and that such office was commonly reputed to be within the liberties, the plea was held bad, for not stating the return to be before action brought.

In an action against a *sheriff*, for an *escape*, the plaintiff set forth, in his declaration, a judgment recovered for 5,441 dollars and 36 cents, damages, and that a *ca. sa.* issued for the same, and the *execution* produced at the trial was for 5,441 dollars and 37 cents ; it was held, that the mistake in the execution was amendable ; and that, as the declaration only stated the substance of the execution, and did not set it forth, *in hæc verba*, the *ca. sa.* produced in evidence was admissible, under the pleadings.

3. The like plea, except alleging a voluntary return, before suit brought, instead of fresh pursuit and recaption.

4. That the court of common pleas, of *Oneida* county, on the 26th *May*, 1808, in pursuance of the statute, &c. appointed the *liberties* of the *gaol*, at *Whitestown;* and that the defendant, in pursuance of the 6th section of the act, did permit *Brigham* to go at large within the *liberties*, on the 16th *February*, 1809, and that he remains a faithful prisoner; which is the alleged escape.

5. The fifth plea stated the liberties, and the permission to go within them, as in the fourth plea, and that the prisoner, on the 16th *February*, 1809, without permission of the defendant, escaped from the limits, and voluntarily returned before suit brought.

6. The *sixth* plea was the same as the fourth, adding only, that whilst so in custody, the prisoner accidentally and inadvertently, walked sixteen feet beyond the limits, which were bounded by an imaginary line; and that immediately, and before suit brought, he voluntarily returned, &c.

7. The 7th plea stated the establishment of the *gaol liberties* by the court of common pleas, on the 20th *May*, 1808, and that the defendant, in pursuance of the 6th section of the act, and after commitment, *i. e.* on the 10th *December*, 1808, did permit *Brigham* to go at large within the liberties; and that *Brigham*, on the 16th *February*, 1809, inadvertently, and without intention to escape, walked into a certain building, occupied as the office of *Reuben Leavenworth*, sixteen feet beyond the liberties, which were bounded by imaginary lines, of vague and uncertain description, and which lines were commonly deemed, understood and reputed to include the said building or office, and that *Brigham*, within one hour thereafter, voluntarily returned, and hath since remained within the liberties, &c.

To the *second* plea the plaintiff replied, protesting against its sufficiency, and traversing the matters alleged therein.

To the third plea he replied, stating that the defendant took a bond from the prisoner for the liberties; and that afterwards the defendant permitted the prisoner to escape and go at large.

To the fourth plea there was the like replication.

To the fifth plea there was the like replication.

To the sixth plea the plaintiff replied, stating the giving the bond for the liberties, &c. and traversing the matters set up in the plea.

To the seventh plea there was a *special demurrer*, and the following causes of demurrer were assigned:

1. That it is not alleged that *Brigham* returned before suit brought.

2. Because it is inconsistent and contradictory, in stating the liberties to be duly appointed, and yet that they were bounded by lines vague and uncertain, &c.

The *rejoinder* to the replication to the second plea insisted on the matters in the plea, and took issue thereon.

The *rejoinder* to the *replication* to the third plea admitted the giving of the bond, and traversed the escape therein alleged.

There was a similar rejoinder to the replications to the fourth and fifth pleas.

The rejoinder to the replication to the sixth plea, admitted the giving of the bond, and insisted on the matters set up in the plea, and took issue thereon.

There was a *surrejoinder* to the second and sixth rejoinders, and issue thereon.

The surrejoinder to the third rejoinder stated, that after giving of the bonds, and after the return of *Brigham*, he did escape and go at large, and joined issue.

The surrejoinder to the fourth rejoinder stated, that after giving the bonds, the defendant permitted *Brigham* to escape, and joined issue thereon.

There was the same surrejoinder to the fifth rejoinder as to the third.

At the trial, the plaintiff gave in evidence the judgment against *Brigham*, and offered in evidence the *test. ca. sa.* which varied *one cent* from the judgment, in the amount recovered; the judgment being for 5,441 dollars and 36 cents, damages and costs; and the execution being for 5,441 dollars and 37 cents, damages and costs. The defendant objected to the execution, on account of the variance; but it was admitted. The plaintiff then proved, that *Brigham* was committed on the execution, on the 4th *February*, 1809. He then offered in evidence the original record of *survey* of the *gaol liberties*, and proved by a *surveyor*, who had subsequently surveyed the liberties according to that record, that by no construction would they include the *office* of *Reuben Leavenworth;* and that if the lines were run according to the recorded limits, they would not include the gaol. The plaintiff further proved, that while *Brigham* was in the office of *Leavenworth*, he delivered the writ in this suit against the defendant to a coroner of the county. That on the evening of the 8th of *February*, 1809, *Brigham*, in walking along a side walk, within the liberties, the side walk being rendered inconvenient for walking, by reason of the snow, but not so but that he might have passed down the same, *Brigham* said, " *I will not walk here*," and went into the middle of the street, and walked down there, for twelve or fifteen rods, and more than a rod over the limits.

The defendant proved the original survey, and that the liberties were loosely and inaccurately defined; and that no monuments were ever set up to define the liberties; and that the courses and distances would not,

perhaps, in any instance, exactly agree with the map. The defendant then offered to prove by *parol*, the reputed limits; which evidence, though objected to, was admitted. He then proved, that the office of *Leavenworth* was within the reputed limits, since *March*, 1808; and that there were no monuments set up. It appeared, that where *Brigham* walked *in the street*, on the 8th *February*, *was beyond the reputed limits*, and that *Brigham*, from his own conversation, well understood the reputed limits.

The judge charged the jury, that if they believed *Brigham* had *knowingly escaped without the liberties*, they ought to find for the plaintiff; otherwise for the defendant. The jury found a verdict for the plaintiff, and it was agreed that it should be taken, subject to a case, containing the facts above stated.

The following points were raised by the plaintiff's counsel:

1. That the fact found by the verdict supports the issue on the part of the plaintiff.

2. That the defendant is estopped by his admission, in the pleadings, and his putting the cause at the trial, on the reputed liberties, from objecting to the appointment of the liberties.

3. If there are no liberties, the defendant is liable for a voluntary escape, in enlarging the prisoner from the prison-room.

4. The defendant cannot take advantage of the variance between the execution and the original judgment.

By consent, the motion to set aside the verdict, and for a new trial, and the demurrer to the 7th plea, were argued at the same time.

NEW-YORK,
Nov. 1809.

BISSELL
v.
KIP.

*4 Johns. Rep.
45.

†24 Sess. c. 91.

‡3 Cranch,
270. 280.

§2 Cro. Eliz.
393. 2 H. Bl. 108.
3 Term Rep. 424.

*Gold*, for the plaintiff. The finding of the fact by the jury, that *Brigham* knowingly went beyond the limits, goes to all the issues on the various pleas, and it is therefore unnecessary to examine the pleadings. All the law found in the books, about voluntary and negligent escapes, recaption and return, is rendered inapplicable, by the decision of the court in the case of *Tillman* v. *Lansing*,* relative to the gaol liberties under our act. The fifth section of the act relative to gaols,† declares that it shall be lawful for the courts of common pleas in the several counties, " to appoint a reasonable space of ground adjacent to the gaol of such county, to be denominated the liberties thereof, subject to be altered, &c. and such court shall cause the same liberties and their limits, to be designated by inclosures, or posts, or other visible marks, placed on the outer lines of the said liberties, as to them shall seem proper," &c. The act thus contemplates known and visible marks, constituting certain and well defined boundaries, which must become the known and reputed liberties of the gaol.

Two escapes were proved ; the one on the 8th *February*, 1808, by going off the side walk into the street ; and the other by going into the office of *Leavenworth*. The defendant, by his admission in the pleadings, is estopped from saying there were no liberties established. The finding even by the jury contrary to the express admission of the party in his plea, is not to be regarded.‡ But without admitting the fact, that there were liberties, it would be impossible for the defendant to avoid the conclusion, that here was a voluntary escape, for it was fully proved that the prisoner was at large. Nothing but the act of God, or public enemies can excuse the defendant for the escape ; even a discharge by a court, will not excuse him, if the court had no jurisdiction.§ Whatever uncertainty there may be as to the limits, appearing in the survey on re-

cord, there is no doubt or uncertainty as to the *reputed* limits, which it was proved, were well known to the prisoner ; and he knowingly went beyond them.

The objection as to the variance between the amount of the judgment, and the sum stated in the execution, under which the prisoner was committed, is not well founded. Where the process is such as would justify the sheriff in arresting the defendant named in it, he cannot object to any error appearing in the process or judgment.* The party himself, and not the sheriff, is allowed to take advantage of the variance ; and it would be unreasonable to allow a sheriff to avail himself of an error in the process, which was waived by the party, and which might have been amended : but the case of *Jaques* v. *Cesar*,† is decisive on this point. There the judgment was for 55*l*. 10*s*. and the *ca. sa.* on which the defendant was taken in execution, was for 51*l*. 2*s*. and the plaintiff recovered the 55*l*. 10*s*. against the sheriff for an *escape*.

Next as to the *demurrer* to the 7th plea. It is admitted that the prisoner went beyond the limits, and returned in an hour; but it is not stated that he returned before suit brought.‡ In the case of *Dole* v. *Moulton*, cited by the court, in deciding the case of *Tillman* v. *Lansing*, and from which this plea seems to have been taken, the prisoner went over the limits inadvertently and returned *immediately ;* and the limits too were recognised by the court, as an imaginary line. Here the prisoner staid over the limits an hour; and if he might stay an hour, he might continue a week or month.

Again, the plea is contradictory ; for it admits that the limits were established according to the act, and yet insists that they were imaginary lines, wholly vague and uncertain.

NEW-YORK,
Nov. 1809.

BISSELL
v.
KIP.

* 2 *Saund.* 101. n. 2. 1 *Wils.* 255. *Cro. Eliz.* 165. 271. *Cro. Jac.* 288. 1 *Term Rep.* 238.

† 2 *Saund.* 101, and *note* 2.

‡ 1 *Cro. Jac.* 657. 2 *Term Rep.* 126. 12 *Mod.* 31.

*Henry* and *Kirkland*, contra. 1. We admit that there were liberties, either by survey, according to the act, or by reputation. If the original survey is pursued, the lines run would not even include the gaol. It rests, then, on the reputed limits. We contend that the act of the prisoner in going off the walk, was justified by necessity, as the path was obstructed by snow. Where the going beyond the line is accidental, or from necessity, it is not an *escape*. It ought to be shown that there was a wilful intention to escape, in order to render the sheriff liable.

2. It was necessary for the plaintiff to set forth the judgment and execution in his declaration.* If so, he was bound to prove them as they were laid. This is a mere question, how far the proof supports the declaration ; it does not touch the cases as to what may justify a sheriff, or protect him against an action for false imprisonment. The law makes no intendment, in this action, in favour of the plaintiff ; but he is held to strict proof of the facts alleged by him. The execution offered in evidence is not the one set forth in the declaration. If a variance of one cent is allowable, a variance of one dollar, or any other sum might, for the same reason, be permitted. It is, clearly, a fatal variance.†

The defendant may avail himself of this variance ; for where the defendant pleads *nul tiel record*, or takes issue on the fact, whether there is such a judgment, or such an execution, as is stated by the plaintiff, he will be entitled to judgment, if the record or execution produced, varies from the one set out in the declaration.

As to the demurrer. The averment of a return before suit brought, was not necessary, if the escape was involuntary, and accidental ; if it was a voluntary escape the averment would not help. By the act, the court of common pleas are bound to designate the extent of the liberties. As soon as the limits are recorded, the liberties exist, and the sheriff is bound to give the prisoner the

*2 Bac. Abr. 527.
Escape, (G.)
1 Saund. 37, 38.
2 Saund. 98.
Selwyn's N. P.
554.

† Cowper, 474.
671. Doug. 665.
Cro. Eliz. 855.
3 Term Rep.
643. 4 Term
Rep. 560.

liberties, on his finding security. A further duty is required of the C. P. to mark them by visible monuments or boundaries. Suppose the liberties are designated, but no visible bounds are set up, would not the inaccurate and invisible boundaries, excuse an accidental departure from the limits ? If ignorance of the exact course of the limits was the cause of the prisoner's going beyond them, then it was an involuntary departure, and the defendant ought to be excused.

*Benson*, in reply. The plaintiff has, in the first place, proved that the prisoner was at large, and out of the gaol. The defendant, to excuse himself from the consequences of an escape, states the *liberties* of the prison, and that they were granted to the prisoner, on giving security. He is bound then, to show the *liberties*, as they really were. But the plaintiff has proved, that admitting the boundaries of the limits are as stated by the defendant, the prisoner went beyond them ; so that an *escape* has been clearly proved, for which the defendant must be liable.

[KENT, Ch. J. There can be no doubt that the going beyond the limits, under the pretence of avoiding the snow, on the walk, was an escape.]

This is not a hard case on the defendant ; or such as claims any peculiar favour or indulgence from the court. The sheriff is not bound to enlarge the prisoner from the gaol, or to give him the privilege of the liberties, until he has received the most satisfactory security, for his faithful continuance within the limits. If he does not possess that security, it is his own negligence or folly.

As to the variance between the execution produced, and the one stated in the declaration, it may be observed, that the process is not void, but voidable, and might be

amended. Now, is there a case to be found, in which a sheriff has been allowed to take advantage of a mistak e in process to which he is not a party? In *England*, the *ca. sa.* is merely to take the defendant and bring him before the court; and when brought up, he is *committed* until he pays the judgment; and the *committitur* is entered on the roll. So here the return of the sheriff, that he had the defendant in his custody, might be entered on the roll; and a *committitur* awarded. Having returned that he had the party in his custody, he cannot allege that the process was erroneous. It does not lie in his mouth to object a variance. The error is no injury to him. Suppose a wrong *teste* to the execution, it can be amended only, at the instance of the party. The defendant in the execution may have released the error, or waived it, or he may have estopped himself, by some act, from making the objection. No man can take advantage of an error in the proceedings, but a party or privy; or one that is competent to release errors.

KENT, Ch. J. delivered the opinion of the court. 1. The question respecting the fact of the escape was truly settled by the verdict. The point was expressly submitted to the jury, whether the prisoner knowingly escaped from the liberties of the gaol; and by their verdict, they have found that he did. This is not a finding against evidence; the prisoner did, on the evening of the 8th of *February*, 1809, voluntarily and wilfully depart from the liberties; and the only excuse offered was, that it was inconvenient to walk within the path prescribed by the liberties, by reason of snow. This was no excuse; there was no necessity to justify the departure, for it is stated, that notwithstanding the snow, he might still have walked within his limits. It would be most inconvenient, and liable to every imposition, and go in a great degree to defeat the law of imprisonment for debt, if a question of convenience merely, might determine whether a volun-

tary and wilful departure from the liberties, was, or was not an escape. The going into the office of *Leavenworth*, was also an escape. This was without the limits of the gaol liberties, as designated by the court of common pleas. If the liberties were vaguely defined, without the " posts or other visible marks," prescribed by the statute, this would not justify the escape. The sheriff was not bound to take a bond, until the limits were defined according to law; and if he did, and suffered the prisoner to go at large, it was at his peril. The creditor has nothing to do with the liberties, in making out his action. It is enough for him to show the judgment and execution, and the prisoner taken, and then at large, without the four walls of the prison. It lies with the defendant to justify his being at large, by showing liberties established and defined according to law; and if he does not, he fails in making out his defence. Here the defence on this point has totally failed. The office of *Leavenworth* was not within the liberties, according to any construction of the survey made at the instance of the court of C. P. and by them adopted and recorded. The other escape into the middle of the highway, was even without the colour of a pretext of its being within the reputed liberties of the gaol.

2. The question on the special demurrer to the seventh plea, and which, by agreement, was argued in connection with the motion for a new trial, admits of no difficulty. The prisoner, it is stated, did inadvertently, and without any intention to escape, go into an office, sixteen feet beyond the liberties, and returned within one hour after; and that the liberties were commonly deemed to include the office. This plea is palpably bad, for not averring the return to be before suit brought. It admits the escape without any justification; and we may intend, that the plaintiff had commenced his suit pending the escape, and before the return.

NEW-YORK,
Nov. 1809.

BISSELL
v.
KIP.

3. The only point that seemed worthy of much discussion, was that respecting the variance between the judgment and the execution.

What would be the effect of the variance, if the objection had been raised by the debtor himself, is a question not now before us. Here the objection is raised by the defendant, who is not a party to the judgment and execution, and who has acted upon the execution, and to which the debtor himself submitted without objection. This variance between the judgment and execution, by inserting of a cent too much in the latter, was clearly amendable, at the instance of the plaintiff. The case of *Laroche* v. *Wasbrough* and *Marland* (2 *Term Rep.* 737.) is in point. The amendment there was of a *ca. sa.* which had too large a sum inserted by mistake; and the court said there was something to amend by, viz. the judgment, and that the justice of the case required the amendment. The cases referred to, upon the argument in that case, show that the amendment of mistakes in executions, had been carried much further, by allowing it in much stronger instances of mistake. The *ca. sa.* therefore was not void, but only avoidable and erroneous; and in all such cases the rule appears to be settled, by a uniform series of decisions, that the sheriff who is sued for an escape, cannot take advantage of error in the process, to deliver himself from the action for the escape. The erroneous process was a sufficient warrant for him; he cannot take advantage of the defect in this collateral action; the process stands good until the party avoids it by error; and no person can bring a writ of error, but he who is party or privy to the record, and competent to release it. (*Gold* v. *Strode*, *Carth.* 148. *Bull* v. *Steward*, 1. *Wils.* 255. *Ognell* v. *Paston*, *Cro. Eliz.* 165. *Burton* v. *Eyre*, *Cro. Jac.* 288. 2 *Saund.* 46. *n.* 6. 101. *y. n.* 2.) There are cases in which if a party will set out in his pleading immaterial matter, he shall be bound to prove it as laid;

but here the plaintiff did not set out the execution, *in hæc* *verba*, so as to produce a variance between the execution set out, and the execution produced. The declaration only stated the substance of the *ca. sa.* and that it was to satisfy the plaintiff, the *damages and costs* stated in the judgment. The *ca. sa.* produced was therefore admissible under the pleadings; and upon every view of the case, we are of opinion, that the plaintiff is entitled to judgment, upon the demurrer, and upon the verdict.

Judgment for the plaintiff.