This case was very fully and ably argued for the defendant, and the Court has taken time to look into all the authorities cited. The points were deemed well worthy of consideration, but after reflection none of them seem to be well founded.
The first is, that for no act done by color of office, and in the course of its duties, will an action lie against the deputy, but only against the principal. This position is rather inaccurately stated, and when divested of its inaccuracy, is answered by the very stating of it. If an act be done in the course of the duties of an office, it must be properly an official act, and no action lies therefor against either a principal or deputy. But the question is, whether for an act, which neither principal nor deputy hath authority to do, and which is altogether unlawful, the action must be against the former. The Court thinks not. The distinction is where the cause of complaint is for nonfeasance or misfeasance. The law does not impose any duty on a deputy as such — does not recognize him as an officer within himself. For omissions to act therefore he is not responsible, for he is not bound to act. (310) Whenever the plaintiff must state the official character of the party sued, as one of the allegations on which the defendant's liability depends, the principal alone is responsible. But where the corpus delicti
is a thing of active wrong, and a trespass per se, unless justified, then the hand that does or procures the act is liable. True it is, the principal is also liable, for to all civil purposes the act of the deputy, by color of the principal's authority, is that of the principal himself, who must *Page 259 
take care to employ no person who will abuse his authority. But in this last case the principal is not alone liable. The deputy is also, because he is not justified by any authority in himself or his principal. Where the principal is sued for the tortious act of the deputy, the plaintiff must indeed show the connection between them, and therefore the official character of the defendant, because upon that character the connection depends, and upon that again the responsibility of the defendant for the act of the deputy. But where the deputy himself is sued, the plaintiff is under no necessity of showing more than the act of trespass, which constitutes a complete case, unless the defendant shows a lawful authority. This lawful authority does not consist in a deputation to do the duties of an office, but in that and the further fact that the act done was a duty of office; that the officer himself could do it, and consequently that the deputy could also. But if it be an act which is per se a trespass, and an authority to the principal be not shown, by parity, none existed in the deputy. A fi. fa. against A. does not justify the seizing of the goods of B., and trespass lies against the sheriff, if he does it. So it lies against the deputy himself, because he did the act which was unlawful and not justified. But if the action has been by the plaintiff in thefi. fa. for not seizing the goods of A., the sheriff alone could be sued, because the law does not make it the duty of the deputy, as such, to make the money, but only that of the sheriff that he should do it or cause it to be done. This reconciles all the cases cited. Saunderson v.Baker, 3 Wils., 309; Ackworth v. Kempe, Douglas, 40, and Woodgatev. Knatchbull, 2 T. R., 148, were actions against the sheriff (311) for the misconduct of his officer, in which it was contended that the principal was not liable because the deputy was for going beyond his duty. It was held that the principal was liable, not because the deputy was not, but because, although he was, the principal was also, otherwise the principal might put anybody, however worthless or insolvent, under him, and so the public would have no security. But where, as in Cameron v. Reynolds, Cowper, 403, the gravamen is, that the deputy did not act, that is, make a bill of sale to the purchaser of goods bought under execution, the plaintiff could sue the sheriff alone. So here, if the action was for refusing to issue a proper execution, the clerk would be the person. But where it is for seizing the plaintiff's property, by virtue of a void execution issued unlawfully by himself, the trespass, the active unlawful act is not purged by the delegated authority, for the same authority would not justify the principal himself. The opinion of the Court, therefore, is that the action well lies if the execution was void. *Page 260 
As to that, an execution without any judgment is certainly void. One not conformable to, and warranted by a judgment stands on the same footing. I need not cite an authority for this, besides the one adduced for the defendant of Barker v. Braham et al., 3 Wils., 268, which, by the way, is strong to the first point, for it was trespass against the attorney, as well as the plaintiff, for suing out a void ca. sa. That was aca. sa. under which an administratrix was arrested on a judgment debonisintestati, and it was held that trespass vi et armis lay against the plaintiff and the attorney both. But it is said that this execution is good for part, since the executors were liable for their own costs, and therefore that the taking is justified. The consequence would follow, if the premises were correct. The executors are liable for their own costs, and if the process had distinguished their costs from the defendant's in the suit, so as to show the defendant in the execution how much he must rightfully pay, this argument would have been sound. It would (312) have then been the party's own fault if he had suffered his property to be seized for the payment of a sum to which it was liable. But when the clerk mixes lawful and unlawful demands in a process, which from its nature compels the sheriff to levy the false as well as the true demand, and puts it out of the power of the party himself to discriminate the demand of one sort from the other, he is a trespasser ab initio. It is an abuse of the authority to levy a certain sum, to use it as the means of levying a larger sum, especially under such circumstances as prevent the debtor from avoiding a seizure by payment of the true debt. It comes within the reason and the rule of the Six Carpenters' case, 8 Rep., 146. Consistent with this are the cases of Taggert v. Hill, 2 Hay. Rep., 86, andWingate v. Galloway, 3 Hawks, 6. The execution was for the true debt, and the defect was that it did not properly set out the items of costs. The sheriff knew precisely how much in law he ought to raise, and for that the process was good, but here the execution is for the whole sum, as costs adjudged to the defendant in the action.
It is however said that this execution justifies until it be set aside, for the writ may be amended, and then contrary proceedings will be going on together. True, a writ may be superseded at the instance of one party or amended at that of the other, as the interests of one or the other may induce him to move in it. And this plaintiff might well have asked the court to set aside the execution before action brought, for fear the amendment might be allowed pending his action, and so defeat him. But there is no necessity for such a motion in the first instance, if the writ in its present state will not justify. The plaintiff proceeds at his risk, and if he chooses to suppose, as well he may, that the court will not allow the amendment against the justice of the case, or only upon *Page 261 
such terms as will promote justice between the parties, there is nothing to prevent his treating a void process as void, before the court pronounces it so. If this were not so, where is the necessity to amend in any case. The amendment is asked for the sake of putting the process into a shape of justify. If it justified before, no (313) amendment would be necessary, and all these questions would have come on in the shape of motions to set aside. Yet it is not so. Brownv. Hammond, Barnes' Notes, 10, was a ca. sa. against the defendant by a wrong Christian name. The court permitted the plaintiff to amend. Why? Because without, the person arrested would have had his action. So Larochev. Washborough et al., 2 T. R., 737, was a ca. sa. against two on a judgment in King's Bench for that debt and costs, and also the costs in the Exchequer Chamber of a writ of error sued out by one. There were counter motions by the defendant to be discharged out of execution; not to set aside the execution; by the plaintiff to amend, so as to make his arrest lawful by relation, and authorize his future detention. The amendment was allowed, and Buller, J., expressly says that in Brown v. Hammond the plaintiff would have been liable for false imprisonment if the amendment had not been allowed, though the sheriff would have been justified. The executions, says he, was not warranted by any judgment, but the court said they would make it correspond with the true judgment. Until it was thus made to correspond, it was a nullity. The case from New York, Bissell v.Kip, 5 Johns., 89, only decides that the sheriff, in an action for an escape, cannot take advantage of the variance between the judgment and ca.sa., because the writ justified him, and he had recognized and acted on it, and could not then collaterally make the objection.
HENDERSON, C. J., concurred.