## CAWTHORN v. KNIGHT, GUARDIAN, &c.

1. The parties in whose favor executions are required to be issued by the act of 1830, on a decree of the orphans' court, for the final settlement of the accounts of executors, administrators and guardians, are upon the return of " no property found," entitled to executions *in their own names* against the sureties of the defendant in the decree.

2. The courts, in virtue of their power over process issued by them, or their officers, without the aid of legislation, may amend a execution by striking therefrom the name of a person who is improperly joined as a defendant with several others, without impairing its validity as to those against whom it should have issued.

Writ of Error to the Orphans' Court of Henry.

Cawthorn v. Knight.

THE facts of this case may be thus condensed. On the 17th October, 1845, a writ of *fieri facias* tested of the preceding day, was issued from the orphans' court in favor of the appellee against Moses K. Speight, Stephen Cawthorn, Wm. Cawthorn, Wm. Armstrong, executor of John Jones, who was executor of Geo. Jones, deceased, for the sum of $1,453 58, besides costs, which was levied on property in the possession of Stephen Cawthorn. Speight, one of the defendants in execution, was appointed a guardian of the appellee's ward, on the 6th day of November, 1834, executed a bond as such guardian, with Stephen and Wm. Cawthorn, Wm. Armstrong and *Geo. Jones,* as his only securities. On the final settlement of the accounts of Speight, as guardian, a decree was rendered on the 23d June, 1845, against him by the orphans' court, in favor of Knight, (the appellee,) his successor for the sum expressed in the execution. *John Jones* was not an obligor in the bond, nor named in the decree of the orphans' court, though his name is included in the execution. Upon these facts, Stephen Cawthorn moved the court to quash the execution, which motion being overruled, he prayed an appeal.

Previous to the motion of S. Cawthorn, the execution was at the instance of John Jones, quashed so far as it concerned him; and his name was stricken out upon motion of the plaintiff in execution, made at the same time.

J. E. BELSER and J. BUFORD, for the appellant. There is no judgment in favor of Knight against the sureties in the bond, nor was the legal title thereto in him; consequently, execution upon the bond should have been in the name of the obligee for the use of the party interested. The bond is a joint and several obligation, and an execution thereon must issue against *one only,* or *all,* and not an intermediate number. [2 Bac. Ab. 696, 698; 7 Ala. Rep. 593.] Being quashed as to Jones, and his name stricken out, on Knight's motion, the execution was avoided *in toto.*

No counsel appeared for the defendant.

COLLIER, C. J.—The act of 1830, provides that all de-

crees made by the orphans' court on a final settlement of the accounts of executors, administrators, and guardians shall have the force and effect of judgments at law, and executions may issue thereon, for the collection of the several distributive amounts against such executor, administrator, or guardian. [Clay's Dig. 304, § 42.] A subsequent enactment, of 1832, declares, that when such an execution shall be returned by the sheriff "no property found," as to a part thereof, or generally, execution shall forthwith issue against the sureties of such executors, administrators or guardians. [Id. 305, § 45.]

In the case at bar, it is distinctly shown, that previous to issuing the execution in question, a *fieri facias* had been issued and returned "no property found," against the estate of Speight, the former guardian of the ward; so that it was altogether competent to have proceeded against the sureties as the statute prescribes. The plaintiff in execution must be the party in whose favor the decree is rendered; for the execution is a consequence of the decree, and the return upon the execution which issued against the principal obligor, and must conform to them. The seeming incongruity of permitting an execution to issue in favor of any other person than the obligee, is relieved by the statute which declares its legal effect, and gives the summary remedy to the party to whom the money has been adjudged. Such has been the unvarying construction placed upon the act.

John Jones it seems was the executor of Geo. Jones, a deceased obligor, and the question is, whether the insertion of his name avoided the execution *in toto*, or whether it was not amendable by striking out his name, without affecting its validity as it respects the other defendants.

It is said that a writ of execution may be amended for a misprision of the clerk, by the 8th Henry VI, ch. 12; but the statutes of jeofails do not extend to such final process. [2 Archb. Prac. 279.] The amount of the judgment stated in the execution may be amended. [2 T. Rep. 737; 5 John. Rep. 100.] A misnomer on a *ca. sa.* has been amended after it has been executed. [Barnes' Notes, 10; 4 Taunt. R. 322.] And even to strike out one of the names of the plaintiffs. [2 T. Rep. 737.] And an amendment has been allow-

ed so as to make the amount agree with the judgment, where it is variant. [1 Chit. R. 349.]

The amendment of a *ca. sa.* has been allowed by adding the *testatum clause,* (3 Johns. Rep. 144;) or where it issues for more costs than were awarded, (3 Caine's Rep. 98;) and an execution, if tested after the plaintiff's death, has been amended so as to make it conform to the truth of the case. [1 Cow. R. 33; 6 T. R. 368, 450.]

An execution made returnable by mistake to one county instead of another has been amended. [2 B. & P. Rep. 336; 1 Marsh. R. (Eng.) 237; 5 Burr. Rep. 2588.] Indeed it is very difficult to prescribe limits to this salutary power possessed by the courts, of permitting amendments in their process, whether *mesne,* or *final.* It is a power exercised for the promotion of justice, with no parsimonious hand; yet where its allowance would be destructive of the rights of innocent third persons, the court will scan well the grounds upon which its action is sought. See further, 1 H. Bla. R. 541; 1 W. Bla. R. 694; 2 Id. 836; 5 T. Rep. 577; 4 Taunt. R. 322; 5 Id. 606; 4 M. & S. Rep. 328; 3 Greenl. R. 20, 260; 1 Johns. Ca. 31; 11 Mass. Rep. 413; Coleman & C's Cas. 59; 3 Johns. Rep. 448; 9 Id. 386; 3 Murp. Rep. 128; 4 Ohio. Rep. 45; 4 Yeates' Rep. 185, 205, 483; 4 Dall. R. 267.]

Without stopping to inquire whether the present case is embraced by the enlarged and liberal provisions of our statute of amendment, it is perfectly clear that the cases cited, furnish an ample warrant for striking out the name of the party who was improperly joined as a defendant. The powers of courts over their process, independent of legislation, are sufficiently expansive to embrace such an authority. If necessary to sustain the amendment by some record or *memoranda,* the bond would show who were the sureties, and that *John Jones* was not one of them. As a reason for omitting the name of *Geo. Jones,* it would be allowable to suggest his death upon the roll *nunc pro tunc,* or to show the fact to the court in answer to a motion to quash. We think the recital in the *fi. fa.* that his executor was a defendant therein *was*

*prima facie* sufficient, if it was necessary to excuse its omission. The judgment of the orphans' court permitting the execution to be amended, and overruling the motion to quash, is therefore affirmed.