## PHILLIPS & HUDSON v. BRAZEAL.

1. When, on the application of the sureties of an administrator, new sureties are substituted, and no alteration is made in the condition of the substituted bond, or any order made in respect to the extent of the discharge of the sureties in the original bond, if the administrator, on a settlement many years afterwards, is in default, it cannot be assumed that the sureties in the first bond are liable, but it must be intended, the administrator performed his duty until the contrary is shown; and in the absence of such proof, the sureties in the renewed bond are responsible.
2. No petition for a supersedeas is necessary, previous to a motion to quash an execution, in the same court from which it issued; but the motion may be submitted *ore tenus*, in term time.

Error to the Orphans' Court of Walker.

On the 9th December, 1835, Morgan Brazeal was appointed administrator of George Brazeal, sen'r, and entered into the customary bond, with the plaintiffs in error as his sureties. On the 22d March, 1836, Edward F. Brazeal was appointed co-administrator, and entered into bond with the same persons as his sureties.

On the 28th May, 1838, E. H. Hudson, one of the plaintiffs in error, applied to be released as surety, on these bonds, and a citation issued to both administrators, returnable to June term, 1838, and at that term, Morgan Brazeal gave a new bond, with H. C. Whiting, and T. A. Heard, sureties; and on the 19th of the month, E. F. Brazeal entered into bond, by order of the court, as co-administrator, with Samuel McDade, and T. A. Heard, as his sureties in the usual form.

On the first Monday of December, 1844, the administrators filed their accounts, and vouchers for final settlement, which was continued from time to time, and finally, on the 14th August, 1846, a decree was rendered, ascertaining that there was in the hands of the administrator, for distribution, $3,850 50. Separate decrees being rendered in favor of each of the distributees, a decree was rendered in favor of the defendant in error, a grandson of the intestate, for $240 66, for which execution was directed to issue.

An execution having issued in favor of the defendant in error, against the administrator, which was returned no property found, on the 7th January, 1847, the judge of the orphans' court made an order, reciting this fact, and that it appeared to the court, that Elijah H. Hudson, and John Phillips are the sureties of the administrators, on their bond, directed an execution to issue against them. The execution was accordingly issued. At the March term, 1847, the plaintiffs in error moved the court to quash the execution, which motion the court overruled. This is now assigned as error.

P. & J. L. Martin, for plaintiffs in error,

The motion to quash the execution in this case, should have been sustained; and the court below erred in overruling the motion. The following points are relied on in support of the position taken:

1. Because the plaintiffs in error were not the securities of the administrators, and hence the execution as to them was unauthorized and void.

2. The new bonds which were given by the administrators, under the order of the court below, operated a discharge of those in which the plaintiffs in error were sureties—the

condition of the new bond being ganeral, and thereby embracing all of the liabilities of the administrators, as such. This was competent for the court to do under the statute. Clay's Dig. 221-2, § 5, 7.

3. The order declaring the plaintiffs in error the sureties of the administrators, and awarding execution against them, is shown by the record to be false in fact, as to their security-ship—and as to the award of execution unnecessary, in any state of facts. The statute fixing the liability of such securities, and directing the procedure in case of a return of "no property found," upon an execution against their principals. This order can have no influence upon the liability of the plaintiffs in error. Clay's Dig. 305, § 45.

4. The motion to quash the execution was the proper remedy in this case for the plaintiffs in error. See Lockhart v. McLeroy, 4 Ala. 572, and divers other cases decided by this court on this point.

5. If the award of execution against the plaintiffs in error is entitled to consideration in this case, the act of doing so was erroneous, and should be reversed.

T. M. Peters, contra.

1. Motions to quash are not *ex debito*, but their allowance rests in the discretion of the court ; it therefore follows, that a refusal to quash is not revisable on error. Then although errors might have intervened in the proceedings below, this court will not in this way notice them. 3 Bac. Ab. 567, k ; Rex v. King, 2 Stra. R. 1268; Jordan v. Hazzard, 10 Ala. 221, 226 ; Massey v. Walker, 8 Ala. 167 ; Reynolds v. Bell, 3 Ala. 57, *sed vide;* Langford et al. v. Richardson, 5 Ala. 618.

2. But be this as it may, the *fi. fa.* ought not to have been quashed. It is in due form, and follows the judgment and bond. It was properly issued ; because *fi. fa.* on the decree of distribution had been issued to the sheriff, and by him returned "no property found." And as the clerk was authorized on such a juncture to issue it "forthwith" against the sureties, no previous notice was required or contemplated by the statute. Clay's Dig. 199, § 1, *et seq.;* 2 Bac. Ab. 709,

c.; Archb. Pr. 283, 292; 1 Tidd, 513; Clay's Dig. 305, § 45; Clark v. West, 5 Ala. 117.

3. The sureties of an administrator are bound by his settlement, if he acts without fraud. All that such sureties can contest in such a case as this, is the regularity of their bond, or that it is binding on them, or the sum its penalty covers; and this only for defects apparent on the record. Otherwise they should proceed by supersedeas, or bill in equity. Williamson v. Howell, 4 Ala. 693; 4 Ala. 607; 5 Ala. 117, 124-5; Seamans et al. v. White, 8 Ala. 660; McBarnett et al. v. Breed, 6 Ala. 476; Clemans et al. v. Prout et al. 3 Stew. & P. 345; Fryer v. Austill, 2 Stew. Rep. 119; Holloway v. Washington, 3 Ala. 668; Clark v. West, 5 Ala. 117.

4. *Fi. fa.* may be amended by the judgment or bond; if for too much, it may be reduced to the penalty, but suffered to remain for the residue. The converse of this may not be contended, because the penalty of the bond is greater than the judgment. 1 Archb. Pr. 283; 6 T. R. 450; 2 W. Bla. R. 760; Lockhart v. McElroy, 4 Ala. 572.

5. The *fi. fa.* is properly issued in the name of the distributee, instead of the judge of the county court. At least this was the case in Clark v. West, and no objection was made to it. In the present case the error committed in Clark v. West, has been avoided. The order requiring the issuance of *fi. fa.* on the bond, is no judgment nor proceeding in the nature of a motion to show cause. And furthermore it does not affect the validity of the *fi. fa.*, that it includes with the sureties also their principal—this is for their benefit should property of the principal be discovered, and in no case would it work them an injury. 5 Ala. 117; Nolly v. Wilkins, 11 Ala. 872; Elliott et al. v. Mayfield, et ux, 4 Ala. 417; Clay's Dig. 206, § 23; Evans v. Bowling, 8 Porter, 307.

COLLIER, C. J.—It has been decided by this court, that the parties in whose favor executions are required to be issued by the act of 1830, on a decree of the orphans' court, for the final settlement of the accounts of executors, administrators, and guardians, are, upon the return of "no property," enti-

tled to executions *in their own names* against the sureties of the defendant in the decree. Cawthorn v. Knight, 11 Ala. Rep. 579. And where an execution misrecites the amount of the judgment, an amendment has been allowed so as to make them agree. 1 Chit. Rep. 349; 2 T. Rep. 737; 5 Johns. Rep. 100. See also Cawthorn v. Knight, *supra*.

The material question to be considered is, whether, where an administration bond has been renewed under the order of the orphans' court, according to the directions of the statute, before any default or waste of the assets by the administrator, and a final settlement is afterwards made and the estate ordered to be distributed, can an execution issue against the sureties in the first bond, upon the return of "no property found" against the administrator?

It is enacted by an act passed in 1821, that "any executor, executrix, administrator, administratrix, or guardian, may be ordered to give further security, on complaint of any of his, her or their securities, or of any of their representatives." Clay's Dig. 221, § 5. "Where new security shall be ordered and taken of any executor, &c. the judge may direct such alteration in the condition of the bond as the case may require, and may order the original securities to be discharged entirely, or from the time of taking such new security as to him shall seem proper. Id. 222, § 7. Here, the requisition was made by one of the original sureties of the administrators, and a citation issued, calling on them to show cause why they should not give "new security;" and the administrators came into court and executed bonds with other sureties, in the form prescribed by the statute. Clay's Dig. 221, § 3. True, it does not appear *in totidem verbis* that these bonds were approved, but it is shown by the record that they were executed by the direction and sanction of the court, and this, in legal effect, is equivalent to a *positive approval*.

The act of 1832 provides that the orphans' court shall, on the final settlement of an account of an executor, &c. insert in its decree the amount of each distributive share; and whenever any execution shall have issued on any such decree made by the orphans' court, and returned "no property found" generally, or as to a part thereof, execution may forthwith issue against the sureties of such executor, &c.

Phillips & Hudson v. Brazeal.

Clay's Dig. 305, § 44, 45. This enactment does not in terms contemplate the renewal of the bond of an executor, administrator or guardian, yet it may perhaps in such case be interpreted, so to give an execution against the sureties who are *prima facie* chargeable with the default of their principal. Let us inquire which set of sureties stand in such a predicament in the case at bar?

In the Ordinary v. Brigham, 2 Hill's Rep. (So. Ca.) 512, it was determined that, in South Carolina, the ordinary cannot discharge a surety to an administration bond from a liability which the administrator has already incurred. Under the statute of that State, he may at the instance of the surety, revoke the administration, or order the substitution of other surety; but the surety will not, by either of these courses, be discharged from liabilities already incurred—he will however be entitled to contribution from the subsequent surety, who is equally liable with him for the previous default of their principal. In Mississippi, sureties on an administration bond may apply to the probate court to be relieved, and after a new bond has been executed under the sanction of the court, they are absolutely discharged from all liability; and they may plead the new bond in bar of the old one. Russell v. McDougall, 3 S. & Marsh. Rep. 234. See also Killcrease v. Killcrease, 7 Howard's Rep. (Miss.) 311.

There have been decisions in respect to sheriffs' bonds, which may furnish some analogies to guide us. Thus, it has been decided, that where a sheriff collects money on a *fieri facias*, and renews his bond before it was demanded of him, or he converts the same, the sureties in the latter bond may be charged with his default in failing to pay over the money. The Governor, use, &c. v. Robbins et al. 7 Ala. Rep. 79. So, where a sheriff has several sets of sureties by renewed bonds, those sureties will be liable for his default in not paying over money collected on execution, who were such at the time he converted it. Dumas & Co. v. Patterson et al. 9 Ala. Rep. 484.

It has been held that if an execution remain in a sheriff's hands when his term of office expires, on his re-appointment, it is his duty to execute it, and his neglect is a breach of his new bond. State v. Roberts, 7 Hals. Rep. 114. So, his

sureties are liable for money received by him on *execution* after the *bond* is given, though the execution was in his hands previous to that time.    People v. King, 15 Wend. R. 623.    And it has been decided that they who were the sureties of the sheriff at the time the liability accrued for money collected, are properly answerable for his default.    People v. Ten Eyck, 13 Wend. R. 448; Fitts v. Hawkins, 2 Hawkes's Rep. 394.    In South Carolina, it has been determined that ,the additional sureties of a sheriff are liable as well for money collected by him before they executed the bond, as afterwards; unless, perhaps, the sheriff and his original sureties were sued to insolvency before the additional bond was executed.    Treasurer v. Taylor, 2 Bail. Rep. 524.    And in Ohio, it has been held that when a sheriff gives an additional bond, both sets of sureties are liable for his misconduct. State v. Crook, 7 Ham. Rep. (2d part) 221.    See also The People v. Brush, 6 Wend. Rep. 454; Bartlett v. The Governor, 2 Bibb's Rep. 586.

In the case at bar, it does not appear that the judge of the orphans' court made any alteration in the condition of the substituted bond, or made any order in respect to the extent of the discharge of the sureties in the original bond, as provided by the act of 1821, above cited.    We must then determine the liability of the respective sureties, by a reference to the time when, and the circumstances under which they became such.

In the Governor, use, &c. v. Robbins et al., *supra*, we said, "all reasonable presumptions favorable to a performance of official duty are indulged, and it cannot be inferred from the mere receipt of money on an execution by a sheriff, that he has converted it.    If it had been shown previous to the execution of the bond in suit, that the principal of the defendants had appropriated the amount collected by him, then the first set of sureties only would have been liable. But the proof does not show such to be the predicament of this case; the liability to an action does not appear to have been fixed, until after the renewed bond was executed." This reasoning is altogether appropriate in the present case. If it were allowable to institute an inquiry before the orphans' court, for the purpose of settling the question against

which of several sets of sureties an execution should issue under the act of 1832, the record does not show that such an inquiry was made or attempted; and it cannot be assumed that the sureties in the first bond are chargeable. It must rather be intended that the administrators performed their duty, until a default is shown; and no breach of their undertaking appears until they failed to satisfy the decree against them—more than a half dozen years after the new bond was given. This being the case, there is nothing of which the liability of the original sureties can be predicated. If, therefore, upon the record before us, the distributee is entitled to an execution against the sureties, it must issue against those who united with the administrators in the renewed bonds.

It was not necessary for the sureties to have invoked the judgment of the orphans' court by a petition for a *supersedeas*. We have repeatedly held that the jurisdiction of the court from which an execution issues, is as ample upon a motion to quash, submitted *ore tenus* in term time, as if the execution had been regularly superseded in vacation; and that during the sitting of the court, no *supersedeas* is requisite: *Further*, that the quashing, or refusing to quash an execution, is revisable on error. See Briley v. Hodges, 3 Port. R. 335; Lockhart v. McElroy, 4 Ala. R. 572. We have but to add, that the judgment is reversed, and the cause remanded.