# COURT OF APPEALS

OF THE

## STATE OF COLORADO.

### JANUARY TERM, 1898.

[No. 1820.]

HAMILL ET AL. v. PECK.

PRACTICE—GARNISHMENT—JUDGMENT DEBT.
A judgment debt is not subject to garnishment by process from a court other than that in which the judgment was rendered. , A judgment may be reached and impounded to satisfy the debts of the judgment creditor, but it must be done by proceedings in the court which has jurisdiction of the judgment sought to be reached.

*Appeal from the District Court of Clear Creek County.*

MORRISON & DE SOTO, for appellants.

Mr. WM. T. ROGERS and Mr. C. C. POST, for appellee.

WILSON, J., delivered the opinion of the court.

July 25, 1889, in the district court of Clear Creek county, appellant Hamill, who is a defendant in this suit, recovered judgment against appellee Peck for $2,088.50, and costs.

May 25, 1892, Peck paid thereon $750, for which he received credit. May 13, 1895, in a suit pending in the district court of Arapahoe county, judgment was rendered in favor of one Fred W. Cline, and against Hamill, for an amount exceeding $4,000. On May 25, 1895, execution issued on this judgment. On the same day garnishee summons was thereunder served upon plaintiff Peck, who immediately filed answer thereto admitting an indebtedness by him to Hamill on the Clear Creek judgment in the sum of $1,400. July 12, 1895, Hamill formally assigned his judgment against Peck to defendant Strousse, and on July 16 following, execution was issued thereon, and levied by the defendant Bell, ·sheriff of Clear Creek county, upon certain realty claimed to be the property of plaintiff Peck. On August 19, 1895, plaintiff instituted this suit in the district court of Clear Creek county making Hamill, Strousse and Sheriff Bell defendants. The complaint set forth the above facts and prayed an injunction to restrain the sale of his property under the Hamill execution. On the same day a temporary restraining order was granted by the county judge. Thereafter, October 2, 1895, an amended complaint was filed in which the additional averments were made that Peck on August 28, subsequent to the commencement of this suit, had filed an amended garnishee answer in the Cline suit, wherein he admitted an indebtedness on the Hamill judgment of $1,580.61, instead of $1,400; also that on September 9, following, judgment had been rendered against him as garnishee, and in favor of Cline by the district court of Arapahoe county for said sum, and that on September 26, following, during the pendency of this action, he had fully paid off and discharged the same. Defendants Hamill and Strousse answered, denying that plaintiff was entitled to any credit on the Hamill judgment except $750, and that he had paid the judgment against him as garnishee, and alleging *inter alia* that they had no notice of the garnishee proceedings; that they were fraudulent and collusive between Cline and Peck, being instigated by the latter for

the purpose of escaping payment of the Hamill judgment; that they were wholly void and of no effect, and that the proceedings in the Cline suit had been taken to the supreme court on writ of error and were there pending for review. Plaintiff replied denying the material allegations in the answer, and alleging that he had satisfied the judgment of $1,580 against him as garnishee by giving to Cline his promissory notes for the aggregate sum of $790.65 payable in six and twelve months from September 26, 1895. Upon final hearing the court found that at the time of the garnishment, plaintiff was indebted on the Hamill judgment in the amount of $1,673.47, but that he was liable on the garnishee judgment in the sum admitted by his amended answer. Decree was thereupon rendered making perpetual the injunction as to $1,580.61, and dissolving it as to the balance found due to Hamill. From this defendants Hamill and Strousse appeal to this court.

The important and controlling question for determination is one solely of law. Is a judgment debtor subject to garnishment under process from a court other than that in which the judgment was rendered? The proposition has never been raised before the appellate courts of this state, or, if it has, there has been no judicial determination of it. Neither have we any statutory or code provision directly in point. In the courts of other states and in those of the United States, where the question has been considered, there is an irreconcilable conflict of authority. By some it has been expressly held that a judgment debtor is subject to garnishee process from any court of jurisdiction competent to issue it. *Luton v. Hoehn*, 72 Ill. 81; *Fithian v. R. R. Co.*, 31 Pa. St. 114; *Halbert v. Stinson*, 6 Blackf. (Ind.) 399; *Gager v. Watson*, 11 Conn. 168; *Jones et al. v. Onge*, 67 Wis. 520; *Belcher v. Grubb*, 4 Harr. (Del.) 461; *Osborn v. Cloud*, 23 Iowa, 104.

Some other cases cited do not go to the extent claimed for them by appellee. They simply hold that a judgment cannot be levied upon and sold, but that the proper way to reach the debt evidenced by it, is by process of garnishment. The

question did not arise as to what court would have jurisdiction to issue such process.   Whether it must be by the same court which rendered the judgment, or might be by a different court, was not raised nor determined.   On the contrary it seems to be the conceded rule in the federal courts, and it has been so held by the courts of highest jurisdiction in many of the states, that a judgment debtor cannot be held under garnishee process issued from another court.   *Wallace v. McConnell*, 13 Pet. (U. S.) 151 ; *Henry et al. v. Gold Park Min. Co.*, 15 Fed. Rep. 649 ; *Ahlhauser* v. *Butler et al.*, 50 Fed. Rep. 708 ; *Rosenstein et al. v. Tarr et al.*, 51 Fed. Rep. 372 ; *Franklin v. Ward*, 3 Mason, 136 ; *Bank v. Snow*, 9 R. I. 11 ; *Prescott v. Parker*, 4 Mass. 170 ; *Young v. Young*, 2 Hill (S. C.), 436 ; *Shinn v. Zimmerman*, 3 Zab. (N. J.) 150 ; *Burrill v. Letson*, 2 Spears (N. C.), 318 ; *Trowbridge v. Means*, 5 Ark. 135 ; *Norton v. Winter*, 1 Ore. 47 ; *Burnham v. Folsom*, 5 N. H. 566 ; *Alston v. Clay*, 2 Hayw. 171 ; *Dawson v. Holcombe*, 1 Ohio, 135 ; *Embree v. Hanna*, 5 Johns. 100 ; *Sievers v. Wheel Co.*, 43 Mich. 275 ; *Clodfelter v. Cox*, 1 Sneed (Tenn.), 330 ; *Scott v. Rohman*, 43 Neb. 628 ; *Perkins v. Guy*, 2 Mont. 15.

Some of these authorities, especially in the federal courts, even go to the extent that garnishee process will not lie where the debt is in suit in another court.   In *Wallace v. McConnell, supra*, the court said :   " The plea shows that the proceedings on the attachment were instituted after the commencement of this suit. * * * If this doctrine be well founded, the priority of suit will determine the right.   The rule must be reciprocal, and where the suit in one court is commenced prior to the institution of proceedings under attachment in another court, such proceedings cannot arrest the suit; and the maxim, *qui prior est tempore potior est jure*, must govern the case.   This is the doctrine of this court in the case of *Renner and Bussard v. Marshall*, 1 Wheat. 216, and also in the case of *Beaston v. The Farmers' Bank of Maryland*, 12 Pet. 102 ; and is in conformity with the rule that prevails in other courts in this country, as well as in the Eng-

lish courts ; and is essential to the protection of the rights
of the garnishee ; and will avoid all collisions in the proceed-
ings of different courts, having the same subject matter before
them. 5 Johns. 100 ; 9 Johns. 221, and the cases there
cited." This was in an action on a promissory note, wherein
the defendant pleaded that for a portion of the sum owing
by him on the note, he had been duly summoned and judg-
ment had been rendered against him as garnishee in a suit
against the plaintiff and payee in the note in another court
in the same state. A demurrer to the plea was sustained.

*Shinn v. Zimmerman* is a well considered and leading case
cited in all of the cases which hold the doctrine that a judg-
ment debtor cannot be held by garnishee process issuing
from another court. It is true that in this case the gar-
nishee proceedings were had in another state than that in
which the judgment was rendered on the debt sought to be
garnished, but the reasons given and principles enunciated
are equally applicable to similar proceedings in different
courts of the same state. In the unanimous opinion of the
court rendered by the Chief Justice, it was said: " But, if
the debt be attached after judgment, what protection has the
garnishee against the judgment or the claims of the attach-
ing creditor ? His property is liable to immediate seizure
and sale under the execution upon the judgment, while, at
the same time, he is made liable for the amount of the judg-
ment to the attaching creditor. If it be said that the court
will exercise its controlling power to prevent such injustice,
the answer is that even when the judgment is in one of the
courts of this state, the levy and sale may be made at a time
when the court cannot exercise its controlling power. * * *
Upon a question of conflict of jurisdiction, it is clear that
the court which first acquires jurisdiction of the subject-
matter of controversy is entitled to exercise it, and to enforce
the execution of its own judgment. * * * This view of the
case is fully sustained by the authorities. No case has been
referred to, none is known to exist, to sustain the position
that a judgment debt is liable to attachment. The authori-
ties are clear against the position."

The standard text writers, upon review of the two lines of authorities on this disputed question, also sustain this view as being more in accord with sound reason and with the great weight of modern authority. Drake on Attachment, § 625; Freeman on Executions, § 166; Waples on Attachment and Garnishment (1st ed.), p. 596.

In the first named, after giving the reasons urged in the decisions holding the doctrine that a judgment debtor is liable to garnishee process from any court, the author says: "However strongly these reasons apply to the case of a garnishment of the judgment debtor in the same court in which the judgment was rendered, their force is lost when the judgment is in one court and the garnishment in another. There a new question springs up, growing out of the conflict of jurisdiction which at once takes place. Upon what ground can one court assume to nullify in this indirect manner the judgment of another? Clearly the attempt would be absurd, especially where the two courts were of different jurisdictions, or existed under different governments." Mr. Freeman says on the subject: "The garnishment of debts is authorized upon the theory that the garnishee owes something to the defendant, which, after the service of garnishment, may be lawfully withheld from the defendant and appropriated to the payment of defendant's creditors. But when the debt has merged into a judgment, the defendant has no right to delay its payment: nor has he any means aside from payment of preventing his property from being taken and sold under execution for the satisfaction of the judgment. Therefore it has been held in a majority of the states, that a debt due by judgment cannot be reached by garnishment."

"Mr. Waples says: "He,"—the debtor,—"has no cause of complaint when he gets acquittance by paying to another under judicial order what he would otherwise be obliged to pay to his immediate creditor. He would have cause to complain should he be made to pay at a time when such payment would give him no acquittance or under circumstances which

HAMILL v. PECK.

would give him no relief from the judgment. If the judgment against him is in a foreign court other than that in which he is garnished, he should be discharged upon disclosing the existence of the judgment." With reference to the court which rendered the judgment, he further says: " The court, being possessed of jurisdiction, has the exclusive right of effectuating its decree by execution. No other equal tribunal can step before it and say that the judgment-debtor must pay to some person other than the judgment-creditor, without interfering with the jurisdictional power to execute the judgment rendered. If, however, the attachment suit is brought in the same court that rendered the judgment, there would be no clash of jurisdiction should the attaching creditor be subrogated to the right of the judgment-creditor in a suit against the latter."

The courts which take a contrary view simply say, that a debt is none the less a debt because it is merged in a judgment, and as the garnishment statutes make all debts subject to its process, allowing no exception, judgment debts must be included. They admit that hardship may be inflicted upon the debtor, that in order to protect himself he may, at his own expense, be compelled to institute proceedings to restrain the sale of his property under execution issued upon the original judgment; that in some instances he may be compelled to pay twice and be relegated for his indemnification to a suit against the creditor in the judgment for the recovery of the amount so doubly paid,—a remedy which would carry with it no relief if the creditor happened to be insolvent. It would seem that the mere statement of the possible injuries which might result to the garnishee would be sufficient to condemn the doctrine unless it be supported by the imperative mandates of a statute. These decisions would appear to have overlooked or ignored certain fundamental principles upon which all garnishment statutes are based, which are recognized in all jurisdictions, and which are law equally with the statute. These are, that the garnishee should not be placed by the garnishment in any worse posi-

tion than he would be if the original creditor instituted an action against him for the collection of the debt and prosecuted it to judgment; that the debt must be fixed, certain, and of such character and so far under the control of the garnishee that he may lawfully withhold payment to the original creditor, and that payment of the garnishee judgment will operate as an acquittance of the debt, which he may successfully plead in bar of an action for its recovery by his immediate creditor. Tested by these essential requirements we cannot see how the rule contended for can be maintained. Under it the garnishee would unquestionably be placed in a worse position. He is ready and willing to pay the debt to whomsoever the court says he may pay it and receive a discharge, but he is told that he must decide the matter for himself and pay at his peril. If he pays it to the garnishee, under the garnishee judgment, then the judgment creditor may move against his property under execution, and at his own cost and expense he must institute and prosecute injunctive or other proceedings to protect himself. If he pays to the judgment creditor, then he must incur a like expense to defend himself against the garnisher. Under what principle, and for what reason can it be claimed that the garnisher should escape this burden? Why should he not be required to go into the court which rendered the judgment and ask that he be subrogated to the rights of the judgment creditor? He selects his own forum, — the debtor not. Then the one court would have control of the whole subject-matter, no conflict of jurisdiction would arise, and no additional tax or burden would be imposed upon the debtor. Surely the debtor has some rights which ought to be respected.

If it be claimed that this rule should prevail because it is within the strict letter of the statute, then why should not debts due by municipal corporations be subject to garnishment without special statute to that effect? A debt is none the less a debt because it is owing by a municipality. Why, also, should not money paid into court for the benefit of a creditor, be subject to the process? There is no contingency

about it, the debtor acknowledges that he owes that amount to his creditor and pays it into the court for delivery and payment to him. As was well said in the New Jersey case (*Shinn v. Zimmerman*) above cited: "The argument, therefore, drawn from the comprehensive phraseology of the act is by no means conclusive. The statute must be construed as not only to promote the benefit of the creditor, but the advancement of justice and the protection of the just rights of the debtor and of the garnishee."

There is no statute or code provision in this state, authorizing the garnishment of a judgment debt by process from another court, nor regulating procedure therein, and in such cases and under such circumstances we think the safer and better doctrine is that it is not within the class of debts covered by the garnishment statute and that the process will not lie in such case. It is founded in the better reason, and on sounder principles of justice, as well as supported by the preponderating weight of authority. It gives to the debtor no more than just and proper protection, and takes away no right nor remedy from the garnishing creditor. By proper proceedings in the forum where the judgment was rendered he can secure the same result as he could if the garnishment process from another court were permitted, and this without bringing about any vexatious conflict of jurisdiction or subjecting the debtor to any additional and unjust expense or danger.

It is contrary to public policy that in judicial proceedings there should be a conflict of jurisdiction between courts, and statutes should not be construed so as to permit it, especially if any other construction can be given, which will give force and effect to its object and purpose. Certainly the legislature did not intend by the enactment of the garnishment statute to impliedly annul another provision of a law of equal force, and allow a court to be divested of its jurisdiction once properly acquired by another court of only equal jurisdiction. To so hold would invite an unseemly conflict which could not fail to seriously obstruct the ad-

ministration of law. Neither do we think it was the inten-
tion to extend the operation of the statute to debts over
which the debtor did not have such absolute control that he
might lawfully withhold payment from the creditor upon ser-
vice of the garnishment process. Such a construction would
leave the debtor without protection, and would be subversive
of the fundamental principles upon which all garnishment
laws are founded. A debt upon judgment cannot be said to
be *in custodia legis,* but execution may issue at any time and
then it is without the debtor's power, except by a resort to
judicial proceedings instituted by himself to resist the man-
date of the court so expressed.

Another consideration of much force is that in garnishment
after judgment, only the plaintiff and garnishee are the parties.
A creditor who has prosecuted an action on a debt to judg-
ment should not be deprived of its fruits by a proceeding to
which he was not a party, and of which he had no notice.
His rights are to be materially affected and he has a right to
be heard. It is alleged in the answer of defendant Hamill
in this cause, and is not denied, that he had no notice of the
pendency of the garnishment proceedings.

Our conclusion is that a judgment debt is not subject to
garnishment by process from a court other than that in which
the judgment was rendered; that it can be reached and im-
pounded to satisfy the debts of the judgment creditor can-
not be denied, but it must be done by proceedings in the
court which has jurisdiction of the judgment sought to be
reached.

Entertaining these views, we hold that the Arapahoe dis-
trict court had no power to give judgment against the gar-
nishee; when it was disclosed that the debt sought to be
garnished was upon a judgment of another court, he should
have been discharged.

The plaintiff claimed that he was entitled to certain credits
upon the Hamill judgment, which would reduce the amount
appearing upon the face of the execution, and this was an
issue in the action. The court found in favor of plaintiff,

and that the amount due on the judgment on May 25, 1895, was the sum of $1,673.47. The finding was supported by evidence, and this court will not interfere with it.

It is not necessary to pass upon the motion of appellee to strike the bill of exceptions, for the errors which require an order of reversal appear in the record proper. The bill of exceptions has not been considered.

It will be ordered that the judgment be reversed and the cause remanded with instructions to dissolve the injunction except as to the collection on the judgment against appellee and in favor of appellant Hamill of a sum greater than $1,673.47 with proper interest from May 25, 1895.

*Reversed.*