THE STATE, USE OF BAIRD, *v.* WILLIAM HULL ET AL.

1. GUARDIAN BOND. *Jurisdiction of Probate Court to take.*
   B. executed a guardian bond in 1856, with C. as surety. In May, 1860, B. made application for permission to execute a new bond, "her former security having moved out of the State." *Held*, that under this allegation the court had jurisdiction to take the new bond, and that the new surety was bound.

2. SAME. *Same.*
   Under art. 145, Code 1857, p. 461, the court, if it has reason, for any cause whatever, to believe that the first surety is insufficient, or was so when taken, may order or take " additional " security; and when so taken, the new or additional security is liable for all past as well as future breaches of the guardian's duty.

3. SAME. *Liability of new surety for past acts of guardian.*
   The term " additional " embraces the idea of joining or uniting one thing to another, so as thereby to form an aggregate ; an additional

security joined to the former making it an aggregate sufficient as a security from the beginning, and both the old and the new sureties are bound for all acts of the guardian.

4. SAME. *Same.*

It is different, however, where former sureties apprehend danger, and under said art. 145 petition for a new bond. Here the new bond is only security for future breaches, and the sureties are only bound for them, whilst the original sureties are only bound for past breaches. *Lewenthall* v. *State*, 51 Miss. 645, distinguished.

5. SAME. *Omission of words.*

The condition of the guardian's bond, in reference to the final delivery of the ward's property, omitted the words "with its increase and profits." *Held*, that the condition of the bond prescribed by the statute, without these words, was sufficient to cover all additions to the ward's estate, whether arising from nature or the law.

6. DECREE AGAINST GUARDIAN. *Effect of, as to surety.*

A decree rendered against a guardian on her final account is conclusive against her, but is only *prima facie* evidence against a surety not a party to that suit; and he may show, when sued, that the guardian failed to charge her wards with boarding, tuition or commissions, or that she made improper charges in their favor against herself.

7. GUARDIAN BOND. *For what security is liable.*

A guardian bought her husband's land on credit at his administrator's sale, and gave her notes with security. The administrator surrendered to her the notes, and she charged herself with the amount. *Held*, that the surety was bound for this, being held as security for any debt she might owe her ward.

8. SAME. *Proceeds of land in another State.*

Where a guardian in this State receives money, the proceeds of sale of land in other States, the surety on her bond is liable for this. The bond covers all property, no matter where it came from, how it got here, or when it came to the guardian's hands.

9. SAME. *Interest.*

Whenever a guardian is chargeable with interest, the surety is bound. If the guardian charges himself with interest on money, whether loaned or not, the surety is bound for it.

ERROR to the Circuit Court of Marshall County.

Hon. O. DAVIS, Judge.

This is an action against the principal and surety on the guardian bond of Mrs. Baird, on which Hull was the surety. The declaration averred the execution of the bond, 23d of May, 1860, with the following condition: That if Mrs. Baird, as

guardian, " shall faithfully account with the Probate Court of Marshall County, as directed by law, for the management of the property and estate of the orphans under her care, and shall deliver up the said property (omitting the words, 'with its increase and profits'), agreeable to the order of said court, or the direction of law, their said bond shall cease," &c. The declaration further averred, that on the 25th of February, 1856, the said Mrs. Baird qualified in the said court as guardian of the plaintiff, with D. H. Crisp as her surety ; that afterwards Crisp removed from the State, and that said Mrs. Baird, in pursuance of an order of the Probate Court, made the bond sued on (in the amended declaration, the words " duly and legally made " is applied to the order of the court) ; that the bond sued on was approved, and ordered to be filed. The breach alleged was, that on the 16th January, 1875, the guardian made a settlement in the Chancery Court of Marshall County, in obedience to its order, showing $5,583 due the plaintiff; which settlement was approved by the court, but the money was never paid.

The defendant Hull filed the seven pleas hereafter mentioned to this declaration, to which the plaintiff demurred. The court overruled the demurrer, and the plaintiff then filed an amended declaration, exactly like the first, save that it contained in the first count the allegation that the order of the court was duly and legally made, and the following addition, viz., that afterwards Crisp removed from the State, and became and was a non-resident; that on the 21st May, 1860, said guardian appeared before said Probate Court, and made known this fact, and said court thereupon, with the consent of said guardian, and for the better protection of the wards' estate, duly and legally made an order, requiring her as guardian to give a new bond, conditioned as the law requires, which order is in words and figures following, viz. : —

" Catharine L. Baird, guardian of Margaret M. Baird and Catharine Baird, minors, this day appeared and made application for permission to execute a new bond for the discharge of her duties as such guardian, her former security having moved out of this State. Whereupon it is considered and ordered by the court that the said guardian execute another bond, conditioned, according to law, for

the discharge of her duties as such guardian, with security, to be approved, in the penalty of ten thousand dollars; and the said Catharine thereupon tendered said bond, with William Hull as her security, who is approved by the court as such.   It is ordered that the same be approved, filed and recorded."

The declaration further averred the guardian executed the bond with Hull, then present in court, as her surety, in obedience to said order, and that the bond was duly executed, regularly approved and filed.

The following extract appears in the record : —

" By consent we file an additional count, exactly the same as the foregoing, except we leave out the words ' with the consent of said Catharine L., and for the better protection of the estate of her said wards;' and insert in lieu thereof the words, having cause to suspect that the surety on said original bond had become insufficient since the execution thereof, or that said surety was in dubious circumstances.

" We will also file an additional count, exactly the same as the first of the above, except we leave out the words, with the consent of the said Catharine L., and for the better protection of the estate of her said wards."

This entry follows immediately the amended declaration, and refers to it.

The defendant Hull filed to the original declaration seven pleas, in substance as follows (the first two being sworn to), viz. : —

The first plea alleged qualification and giving bond, 23d February, 1856, by Mrs. Baird as guardian, with Crisp as surety ; and without being removed or disturbed in said guardianship, and without Crisp filing a petition alleging that he apprehended danger, and without any notice to the wards, she gave another bond, with Hull as surety, 21st May, 1860, when the court had no power to receive the same.

The second plea alleged the qualification and giving the Crisp bond, as in the first plea; the administration of more than half the property; that the court could neither require nor approve a new bond which would bind the surety for past administration ; that Hull without consideration executed the bond, which purports to operate not only for the future,

but also to bind him for all the breaches of the first bond, and that the court had no right to take such new bond.

The third plea alleged appointment and giving of the first bond, and the action of Mrs. Baird as guardian, as in the previous pleas; that before the execution of Hull's bond a large amount of money came to Mrs. Baird's hands, which is embraced in the final decree, and which the guardian failed to deliver up; that some other money came into her hands after the 20th of May, 1860, part of which was expended in support of the wards, and the rest paid to them.

The fourth plea was the same as third plea, except the allegation that property which came to the guardian's hands before May, 1860, was maladministered before that time by the guardian.

The fifth plea alleged that the guardian charged herself with $1,000 negro hire, and $3,000 interest, whilst the bond of Hull is not conditioned for the delivery of the property with " its increase and profits," and that Hull is not bound to pay the same ; and that as to the residue of the money mentioned in the decree, Mrs. Baird paid the same.

The sixth plea alleged that Mrs. Baird, in her annual account of 1862, charges herself with $952, proceeds of sale of her husband's estate, which is, with interest, embraced in the final decree, and that this money in fact did not come to her hands; that, by a decree of the Probate Court, empowering her to purchase lands, she did, in June, 1856, buy the land of her husband at $1,904 ; but, in violation of duty, she took the deed to herself and gave her receipt to the administrator, who sold the land for $1,904, and charged herself with one half of it for the plaintiff, and the other half for her other ward, Louisa ; that, in fact, she received no part of said money ; and that, as to the balance of the money in the decree mentioned, she paid it to the wards.

The seventh plea alleged that said Catharine fraudulently, and with a view to injure the defendant, made an improper account in this, viz., that she charges herself with $2,500 interest on certain moneys which the Probate Court had not directed her to loan, " taking bond and security for the payment thereof," or which she consented to take at interest, " with the approba-

tion of said court;" that she charged herself with $1,000, proceeds of land sold in Tennessee; and that she failed to credit herself with the boarding, clothing, education and support of her wards; and as to the residue of the money, that it was paid to the plaintiff.

The plaintiff demurred, assigning many causes.

The court overruled the demurrer as to the first, second, third, fourth and sixth pleas; sustained it as to the fifth and seventh; and extended the demurrer back to the declaration, which it held to be insufficient.

To the amended declaration the same seven pleas were interposed, with three additional pleas:—

The first plea denied that the order of the Probate Court requiring new bond was " duly and legally" made, and says, that the order recites that it was made on the guardian's application, because the surety on the first bond, Crisp, had removed from the State, and no other cause is assigned. Avers that the removal is, and was not, a sufficient ground to give the court jurisdiction to require the bond sued on; and therefore, for want of authority, &c., it is not his bond. This plea is sworn to.

The second plea alleged that the guardian fraudulently, with a view to injure the defendant and benefit her wards (her children), did for the first time, in her sixth annual account, in March, 1862, charge herself with $952, received for land sold, belonging to W. S. Baird, and with $172 interest, and did fraudulently bring forward and charge herself with said sum and interest in her final account, the plaintiff having reached her majority in 1868; that no money was ever received from the sale of the aforesaid real estate, but that at the administrator's sale of said land in 1856, under order of the court, the said guardian purchased the land at $1,904, for herself, took the title in her name, executed her notes for that sum due in May, 1857 and 1858; that not a dollar was paid on said notes, but the notes were delivered to her by the administrator, and receipted for by her, and she never received one dollar, or any thing, except the notes; that she did not even charge herself with this pretended sum of money until after the bond sued on was executed, and that all her said conduct was a fraud on the defendant.

The third plea alleged that the charge in the final account for the hire of two slaves for 1862, 1863, and 1864, of $200 for each year, and interest, $300, amounting to $900, is, as to the defendant, collusive, fraudulent and void, because for those years the condition of the country of the guardian's residence, by reason of the war, rendered slaves valueless, and that she did not hire them out, or receive hire for them, during those years ; that in divers other charges in the final account and omissions to make charges against her wards for board and other matters there is fraud and illegality ; wherefore the defendant says that the settlement is not obligatory upon him.

The plaintiff demurred again to the seven pleas, and also to the three pleas to the amended declaration.

The court overruled the demurrers as to all except the fifth and seventh pleas, extended the demurrer to the declaration, and gave judgment for the defendant Hull. Hence the writ of error.

*Falconer Brothers*, *Stith & Phillips*, and *Manning & Watson*, for the plaintiff in error.

The first and second pleas involve the validity of the bond sued on : first, for want of power in the Probate Court to take it, under the circumstances ; and, secondly, for want of consideration, in this, that the wards' property had all come into the guardian's hands before the new bond was executed.

If the court had power to require the new bond, then it follows that the consideration was sufficient ; for, in that case, the giving of the new bond was the essential and *only* condition on which the guardian could retain her office.

The wards were orphans. This was strictly a matter of "orphan's business ; " and therefore the jurisdiction of the Probate Court over the subject-matter was full, ample and complete. See Const. in Code of 1857, p. 30, § 18 ; Code of 1857, p. 460, art. 145 ; *Blanton* v. *King*, 2 How. (Miss.) 856 ; *Powell* v. *Burrus*, 35 Miss. 605–615 ; *Carmichael* v. *Browder*, 3 How. (Miss.) 252 ; *Hamberlin* v. *Terry*, 7 How. (Miss.) 143 ; *Pinkstaff* v. *People*, 59 Ill. 148 ; *Hardy* v. *Gholson*, 26 Miss. 70 ; *Scott* v. *Starks*, 14 S. & M. 94 ; *Neylans* v. *Burge*, 14 S. & M. 201 ; *Ratliff* v. *Davis*, 38 Miss. 107 ; *Ward* v. *State*, 40 Miss. 108 ; *Gildart* v. *Starke*, 1 How. 450 ; *Green* v.

*Creighton*, 10 S. & M. 163 ; *Jones* v. *Coon*, 5 S. & M. 751 ; *Housh* v. *People*, 66 Ill. 178 ; *Killcrease* v. *Killcrease*, 7 How. (Miss.) 311 ; *Glenn* v. *Wallace*, 4 Strob. Eq. 149 ; *Clark* v. *Niles*, 42 Miss. 460.

The court, then, independent of any statutory provisions, had power to determine the sufficiency of a guardian's bond ; and when it believed, or " *had cause to suspect,*" that the surety or sureties had become insufficient, or were in failing or dubious circumstances, to require a new bond ; and on failure to give it, to remove the guardian. Having ample jurisdiction of the subject-matter, it had the power to determine *what facts* rendered the bond insufficient ; and, in a collateral proceeding like this, its judgment is conclusive. Every presumption of law is in its favor. *Singleton* v. *Garrett*, 23 Miss. 195 ; *Duncan* v. *McNeill*, 31 Miss. 704 ; *Pollock* v. *Buie*, 43 Miss. 140 ; *Smith* v. *Bradley*, 6 S. & M. 179 ; *Wall* v. *Wall*, 28 Miss. 409 ; *Moore* v. *Ware*, 51 Miss. 206 ; *Cannon* v. *Cooper*, 39 Miss. 789 ; *Ralston* v. *Wood*, 15 Ill. 159 ; *Owen* v. *State*, 25 Ind. 371 ; *Supervisors* v. *Coffenbury*, 1 Mich. 355 ; 11 Cushing, 107. The court, in the first instance, might reject a surety for non-residence alone ; and, upon the same principle, could require a new bond when the surety on the first bond had removed from the State.

It is contended by counsel for the defendant in error that the voluntary appearance of said guardian and her surety, and her admission of the fact in open court upon which the order was made, were not sufficient to give the court jurisdiction of her person ; and that the execution of said bond in obedience to said order, and all the proceedings, were *coram non judice*, and void. That this position is not well founded, we refer to the following authorities: *Ward* v. *State*, 40 Miss. 108 ; *Byrne* v. *Jeffries*, 38 Miss. 533 ; *McCrosky* v. *Riggs*, 9 S. & M. 107 ; *Gwin* v. *Williams*, 27 Miss. 324 ; *Frisbie* v. *Harrison*, 30 Miss. 452 ; *Hardy* v. *Gholson*, 26 Miss. 70 ; *Barker* v. *Shepard*, 42 Miss. 277 ; *Schirling* v. *Scites*, 41 Miss. 644 ; *Stevens* v. *Richer*, 1 How. (Miss.) 523 ; *Young* v. *Rankin*, 4 How. (Miss.) 27 ; *Henderson* v. *Hamer*, 5 How. (Miss.) 525 ; *Graves* v. *Fulton*, 7 How. (Miss.) 592 ; 4 Strob. Eq. 149.

The bond sued on is a good common-law bond, the consider-

ation being the guardian's retention of her office. *United States* v. *Maurice*, 2 Brock. 96 ; *McCrosky* v. *Riggs*, 9 S. & M. 112 ; *French* v. *State*, 52 Miss. 759 ; *Taylor* v. *State*, 51 Miss. 79 ; *Byrne* v. *State, ubi supra ; Todd* v. *Cawell*, 14 Ill. 72 ; *Owen* v. *State*, 25 Ind. 371 ; *Supervisors* v. *Coffenbury, ubi supra ; Stephens* v. *Crawford*, 1 Kelly (Ga.), 583. The court had power to accept the new bond. *Sebastian* v. *Bryan*, 21 Ark. 447.

The third plea is, that $4,500 of the wards' estate was received by the guardian before the second bond was given, and only $800 afterwards, which last sum had been paid; but alleges no misapplication prior to the date of the second bond. Then the whole estate was permitted to remain in her hands by giving the second bond. She retained her office, and this constituted the consideration ; and the last bond covered the whole estate. But this question comes under review in the discussion of the fourth plea, to which I proceed.

The fourth plea is the same in substance as the third, except that it alleges that $4,000 of the estate was misapplied and wasted before the new bond was given. It raises directly the question of the scope of the second bond. Does it cover the whole period of the guardianship ? Does it operate not only for the future, but for the past ? We hold that it does.

Before reviewing the authorities on this point, let us examine the statute, in connection with the general constitutional powers of the Probate Court. Its jurisdiction under the Constitution was ample, in all matters of orphans' business ; and this was strictly a matter of that character. " And can the Probate Court do nothing but what is particularly set down in some statute ? This would be a very erroneous view of the powers of that court." *Ward* v. *State*, 40 Miss. 113.

A probate judge knowingly taking on guardian's bonds, in the first instance, non-residents as sureties, would surely be held to be derelict in duty, and regardless of the interests of those committed to his care. If wrong, in the first instance, to admit non-residents as sureties, it was a plain duty, when the original surety had removed from the State, to require a new bond. In such case the new bond would plainly be cumulative, covering the whole guardianship, and would not

leave the ward to traverse the world in search of a wandering surety. The original surety is certainly not released, having never asked to be. But the object of *additional* surety in such case is to preserve to the ward a remedy *at home :* not *half* relief here, and the balance *he knows not where !*

Observe the provisions of art. 145, pp. 460, 461, Code 1857. The first and third clauses provide against misconduct of the guardian, for which he may be removed, however good his sureties. The third clause prohibits the removal of the ward's property from the State, and shows the policy of the law to be *to keep the remedies here.* In the light of such policy, how should the *second* clause of said article be understood? See its provisions, Code 1857, p. 461. We have two criticisms to make upon its construction. The first is, that, when it speaks of the sufficiency of sureties, it must be understood to do so in view of the legal remedies afforded by our own courts, and not of the uncertain and unknown remedies afforded by foreign tribunals. The second is, that the first three clauses are framed wholly with a view to the interests of the ward, and without any view whatever to the protection of the surety. Hence nothing is said about the new bond " operating only for the future," &c., but that provision is contained only in the fourth clause, which is framed for the protection of the sureties. The reason is obvious. The protection of the ward, under the second clause, would be very inadequate, in case of *insufficient* sureties, if the new bond only " operated for the future." And here the rule prevails, *expressio unius, exclusio alterius.* Pinkstaff v. People, 59 Ill. 148 ; State v. Roberts, 7 Halst. (N. J.) 114 ; Garrett v. Hamblin, 11 S. & M. 219 ; Burrus v. Thomas, 13 S. & M. 459 ; Ennis v. Smith, 14 How. 400, 417 ; State v. Stewart, 36 Miss. 652 ; Glenn v. Wallace, 4 Strob. Eq. 149 ; Phillips v. Bird, 14 Ala. 746 ; McClendon v. Harlan, 2 Heisk. (Tenn.) 337.

Now we come to the condition of the bond and the breach alleged. The condition is, that the guardian " shall *faithfully account* with the Probate Court . . . for the management of the property and estate of the orphans under her care, and *shall also deliver up* said property *agreeably to the order of said court,*" &c. The requirement being that the guardian " shall

faithfully account," &c., *for what* is she to account? Manifestly for the *whole* property or estate of her wards which *have* or *may* come to her hands, and not for a *part* only. A *partial* account would *not* be a *faithful* account, nor could she make *two final* accounts as to the same ward, but the one must embrace the whole estate. Such account the defendant Hull undertook, by the very letter of his contract, that she should make. But his undertaking goes a little further, and is also that she shall " deliver up " (or pay over) " agreeably to the order of said court," &c. The breach alleged that, although she did account, and that the court thereupon ordered her "to pay over " the balance due her ward, " she did not, nor would, obey said decree," &c., is the only one alleged. We maintain that the one obligation in the bond is clearly commensurate with the other, and that she was bound to pay over or deliver up that for which, as guardian, she was bound to account. The surety is equally liable in either case.

This plea (the fourth) is also bad, in merely alleging, in general terms, that the estate was maladministered before the new bond was given, without showing *how* or in what particulars. This is a mere legal conclusion, and is not sufficient.

The fifth plea sets up that " said bond is not conditioned that said guardian shall deliver up her wards' property *with its · increase and profits ;* " and *therefore* that said surety is not bound to pay certain negro hire and interest with which said guardian is charged in her said final account. If this were true, the absence of the words " with its increase and profits " would convert a guardian's bond into a mere forthcoming bond. But the condition is that said guardian " shall in all respects perform her duties as guardian," &c. The statute made it *her duty* to take care of her wards' estate, to return an annual inventory of its increase and of its income, to cultivate or lease the wards' real estate, to expend only the income for ward's maintenance ; and she not merely bound herself by her bond, but also by her oath, to perform these duties. Code 1857, art. 143, p. 460 ; arts. 146, 147, 149, &c.

The sixth plea sets up, in substance, the purchase by said guardian, in her own right, of certain lands sold at public sale by the administrator of her deceased husband, and the exe-

cution of her notes therefor; and alleges that afterwards, not having, in fact, paid the said notes, the same were surrendered to her by said administrator, on her receipting him, as guardian, for the amount due thereon as a part of her wards' distributive share of said estate; whereupon she charged herself on her guardian account with said sum; but said surety is not bound therefor.

The very facts alleged in the plea show that said guardian had made herself liable to her wards for said sum; and the wards had her election to claim the land, or the money and interest. It was a failure of the guardian to perform her duty, for which she and her sureties were clearly liable. The claim of the wards against the administrator of the deceased ancestor was lost by the laches of the guardian; and the surety is responsible. *McCreedy* v. *Mier*, 64 Ill. 495; *Rucker* v. *Redmon*, 67 Ill. 187; *State* v. *Stewart*, 36 Miss. 652.

The seventh plea raises the question of interest, as in the fifth plea; and also the further question as to whether the surety is liable for money of the wards received in the State of Tennessee by said guardian, and charged in her accounts. We refer to our argument as to the fifth plea, and the articles of the Code there referred to. It is the guardian's duty to charge herself with and to account for the wards' estate which comes to her hands, no matter whence derived. Neither the guardian nor the surety can object that the guardian had no authority to receive such assets as actually came to the guardian's hands. *Reynolds* v. *Walker*, 29 Miss. 250; *Roach* v. *Jelks*, 40 Miss. 754; *Crump* v. *Gerock*, 40 Miss. 765; *Coffin* v. *Bramlitt*, 42 Miss. 194; *Martin* v. *Stevens*, 30 Miss. 159; *Satterwhite* v. *Littlefield*, 13 S. & M. 302. The decree of the Chancery Court, fixing the sum owing the ward by the guardian on final account, *is conclusive upon the surety when sued on the bond.*

The jurisdiction of the Probate Court, under the Constitution of 1832, was not merely full and complete in matters of administration and guardianship, *but exclusive.* Its decrees in such matters could not be collaterally attacked, except for fraud; and, if set aside for fraud, decrees allowing final accounts were referred back to the Probate Court for a restate-

ment of the account. *Jones* v. *Coon,* 5 S. & M. 751 ; *Green* v. *Creighton,* 10 S. & M. 163 ; *Searles* v. *Scott,* 14 S. & M. 94 ; *Neylans* v. *Burge,* 14 S. & M. 201 ; *Ratliff* v. *Davis,* 9 Geo. 107 ; *Bird* v. *State,* 1 How. (Miss.) 173 ; *Wall* v. *Wall,* 28 Miss. 409 ; *Bailey* v. *Dilworth,* 10 S. & M. 404 ; *Jones* v. *State,* 14 Ark. 122 ; *Goodrich* v. *Thompson,* 4 Day (Conn.), 215 ; *Phillips* v. *Brazeal,* 14 Ala. 746 ; 48 Ind. 391 ; 47 Ind. 98 ; 24 Vt. 42 ; 20 Ohio, 310 ; 25 Ill. 489 ; 19 Ala. 298 ; 14 Ark. 122 ; 4 Ala. 607, 693 ; 36 Ala. 606 ; 37 Barb. (N. Y.) 520 ; 11 Cushing, 107 ; 27 Tex. 623 ; 2 Sandf. (N. Y.) 636.

If the surety is not estopped to plead, the ward is not estopped to reply, and thus the whole account will be reopened. *Gwyn* v. *Hamilton,* 29 Ala. 233 ; 30 Md. 234 ; 26 N. Y. 53.

The jurisdiction of the present Chancery Court over these matters is equally full and exclusive. No other than the Chancery Court has jurisdiction to entertain the matter of a guardian's final settlement. *Singleton* v. *Garrett,* 23 Miss. 195 ; *Cannon* v. *Cooper,* 39 Miss. 785 ; *Barnes* v. *Thomas,* 13 S. & M. 459 ; *Pickett* v. *Ford,* 4 How. (Miss.) 246 ; *Cartwright* v. *Carpenter,* 7 How. (Miss.) 328. The Circuit Court has no more jurisdiction to restate the guardian's final account for the benefit of the surety than for the principal. *Jurisdiction of the subject-matter, under the Constitution, is exclusive in the Chancery Court.* See authorities *supra,* especially *Singleton* v. *Garrett.*

*Lipscomb* v. *Postell,* 38 Miss. 476, relied upon by the defendants in error, is not in point. The exclusive constitutional jurisdiction of the Probate Court was a question not raised in that case ; and the question of title involved was one of which the Circuit Court had at least concurrent jurisdiction. Besides, the surety's *contract* is that the guardian *shall make a faithful settlement with the Probate Court,* and that, when made, she will pay over accordingly ; and the only breach assigned is the failure to so pay over. Having contracted to be bound by the decree, he cannot question it, except for fraud. *Singleton* v. *Garrett, ubi supra ; Stovall* v. *Banks,* 10 Wall. 583 ; *Ennis* v. *Smith,* 14 How. 400 ; *Phillips* v. *Bird,* 14 Ala. 746 ; *Glenn* v. *Wallace,* 4 Strob. Eq.

149 ; 2 Heisk. (Tenn.) 337 ; 8 Conn. 513 ; 25 Ill. 289 ; *People* v. *Laws*, 3 Abb. Pr. 450 ; 2 Duer (N. Y.), 160 ; *Lamkin* v. *Heyer*, 19 Ala. 228 ; 4 Ala. 607, 693 ; 14 Ala. 648 ; 36 Ala. 606 ; *Heard* v. *Lodge*, 20 Pick. 53 ; *Irwin* v. *Backus*, 25 Cal. 214 ; *Pinkstaff* v. *People*, 59 Ill. 148 ; 59 Ill. 35 ; *Owen* v. *State*, 25 Ind. 371 ; *State* v. *Holt*, 27 Mo. 340 ; *Hobbs* v. *Middleton*, 1 J. J. Marsh. 177 ; 7 Barr, 265 ; 40 Miss. 108.

*Howard Falconer* and *R. S. Stith* also argued the cause orally on behalf of the plaintiffs in error.

*A. M. Clayton, Walter & Walter*, and *Fant & Fant*, for the defendant in error.

Under the Code of 1857, art. 145, p. 461, the Probate Court had no jurisdiction to take the bond of Hull. A suggestion that the former security had removed from the State is not sufficient. This is the only ground of jurisdiction stated. The court can presume none other. The rule is, in reference to courts even of general jurisdiction, that, when the " record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done ; *but where the record states what was done, it will not be presumed something different was done.*" *Hahn* v. *Kelly*, 34 Cal. 391. The same doctrine is held in *Byrd* v. *State*, 1 How. (Miss.) 167, and in *United States* v. *Griffin*, 8 Cranch, 9. A record showing a verdict by ten jurors is fatally defective. *Redus* v. *Wofford*, 4 S. & M. 579. Would not a judgment based on the fact that the plaintiff was a citizen of Tennessee be absolutely void ? If the jurisdictional fact shown by the record is insufficient, a judgment resting on it is void, even though the court has jurisdiction over the person and subject-matter. The judgment requiring Hull's bond rests on the fact of the removal of the former security, and nothing more. This was not sufficient, and the bond is void.

Where a proceeding is purely statutory, all jurisdictional facts must appear on the record ; and any order or judgment of the court in the absence of the facts which authorize it to act is void. *Thatcher* v. *Powell*, 6 Wheat. 119 ; *Stampley* v. *King*, 51 Miss. 728 ; *Campbell* v. *Brown*, 6 How. 106 ; *Ingersoll* v. *Ingersoll*, 42 Miss. 155 ; *Ballard* v. *Davis*, 31 Miss. 525 ;

Story Eq. Plead. 20; High on Receivers, 134, 227; *Root* v. *McFerrin*, 37 Miss. 17; *Earl* v. *Crum*, 42 Miss. 165; *Foster* v. *Glazener*, 27 Ala. 39; *Earthman* v. *Jones*, 2 Yerg. 484; *Gunn* v. *Howell*, 27 Ala. 663; *Cary* v. *Dixon*, 51 Miss. 593; *Caskey* v. *State*, 6 Ala. 193; *Byers* v. *State*, 20 Ind. 47; *Barker* v. *Shepard*, 42 Miss. 277; *Kennedy* v. *Gaines*, 51 Miss. 625; *Cason* v. *Cason*, 31 Miss. 278; *Cannon* v. *Cooper*, 39 Miss. 784. This rule holds as well in regard to courts of general jurisdiction when exercising a special statutory power, as in regard to courts of special jurisdiction. Herman on Estop. 158; *Kelly* v. *Striker*, 7 Hill, 22. In support of this proposition, and to show that this court has held similar bonds void, they reviewed at length the following cases: *Vick* v. *Mayor of Vicksburg*, 1 How. (Miss.) 140; *County of DeSoto* v. *Dixon*, 34 Miss. 151; *Boyd* v. *Swing*, 38 Miss. 182; *Taylor* v. *Arthur*, 9 S. & M. 183; *State* v. *Bartlett*, 30 Miss. 624.

There is a broad distinction between bonds of public officers *de facto* and guardians' bonds. There is no such thing as a guardian *de facto*; and bonds given by them derive their entire validity from the statute. This case is unlike *Byrne* v. *State*, 50 Miss. 693, and *Taylor* v. *State*, 51 Miss. 88. In these cases, the court held that, the principals being *de facto* public officers, and having thus got possession of public funds, were estopped to deny their official character, given them by the recitals in their bonds. In the case before the court there are no recitals "to exclude the truth." *Turnipseed* v. *Hudson*, 50 Miss. 452.

Hull's bond, not having been given in accordance with the statute, is not good even as a common-law bond. But this bond is sued on as a statutory and not as a common-law bond, and a recovery cannot be had in this action. *Stephens* v. *Crawford*, 3 Kelly (Ga.), 499; *Taylor* v. *Arthur, ubi supra.* A recovery can only be had on it, if at all, as a common-law bond, for actual damage sustained, and this is not sued for in this case. *Perkins* v. *Giles*, 9 Leigh, 397; *Taylor* v. *Johnson*, 17 Ga. 521; *Stuart* v. *Lee*, 3 Call (Va.), 364; *Roberts* v. *Colvin*, 3 Gratt. 358; *Morrow* v. *Peyton*, 8 Leigh, 54. In case of public officers, removal from the State of a surety is, by

special legislation (Code 1857, pp. 137, 138), ground for requiring new bond. It is fair to presume that the legislature would have made similar provisions as to guardians, if it had intended courts to act in such cases. If there is an unintentional *casus omissus*, it is not for the court to supply it. *Ray* v. *Murdock*, 36 Miss. 692. The court will not impose obligation on sureties where none has been *assumed according to law*. *Thomas* v. *Burrus*, 23 Miss. 550 ; *Middleton* v. *Caldwell*, 4 Bush, 392 ; *McGhee* v. *Anderson*, 11 Humph. 595 ; *Farrar* v. *United States*, 5 Pet. 372 ; *Lewenthall* v. *State*, 51 Miss. 645.

Hull's bond is only prospective. Art. 65, Hutch. Code, 658, provides that the new bond given shall bind the new sureties in the same manner as if it had been originally executed; and § 66 expressly provides that the original sureties shall be wholly released on the execution of the new bond. The Code 1857 as expressly excludes all idea of a past liability, and provides, p. 461, " that the new bond shall only operate for the future," &c. This is the history of our legislation on the subject. But this court has settled this question of the policy of the law the same way. *Lewenthall* v. *State, ubi supra.* See also to same point, *United States* v. *Boyd*, 5 How. 29 ; s. c. 15 Pet. 187 ; *Vivian* v. *Otis*, 24 Wis. 518 ; *Rochester* v. *Randall*, 105 Mass. 259 ; *Mann* v. *Yazoo City*, 31 Miss. 574 ; *Thompson* v. *Dickerson*, 22 Iowa, 360 ; *Bryan* v. *United States*, 1 Black, 140. Sect. 315, Code 1871, provides that the board of supervisors may require new bond when they deem the first insufficient; and § 316 gives a remedy for sureties who deem themselves in danger. In *Lewenthall* v. *State, ubi supra*, the provisions of the latter are applied to the former section. Art. 145, Code 1857, p. 461, embraces in its first and last clauses almost the same language of §§ 315, 316, before cited, and therefore Hull's bond must be prospective, if Lewenthall's was.

Hull is not bound for increase and profits of the estate ; his bond is conditioned for the delivery by the guardian of the property of the wards, but omits the words " with its increase and profits," contained in the statutory enactment for such

bonds. " The obligation of the surety is one of strict law, and never arises from implication." *Lewenthall* v. *State, ubi supra; Miller* v. *Stewart,* 9 Wheat. 680. The surety is a favored debtor. *Magee* v. *Manhattan Ins. Co.,* 92 U. S. 93 ; *Triplett* v. *Gray,* 7 Yerg. 17 ; *Crumpler* v. *Governor,* 1 Dev. Law, 52 ; *Gov.* v. *Matlock,* 1 Dev. Law, 214 ; *Amos* v. *Johnson,* 3 Har. & McH. 216 ; *Anderson* v. *Falconer,* 34 Miss. 257.

The judgment in the Probate Court against Mrs. Baird, the guardian, is only *prima facie* evidence against Hull, her surety. *Lipscomb* v. *Postell, ubi supra ; State* v. *Stewart,* 36 Miss. 652 ; *Mann* v. *Yazoo City,* 31 Miss. 574 ; *Drummond* v. *Prestman,* 12 Wheat. 515 ; Herman on Estop. 158 ; *United States* v. *Boyd,* 5 How. 29 ; *Atkins* v. *Baily,* 9 Yerg. 111 ; *M'Dowell* v. *Burwell,* 4 Rand. 317 ; *Hobson* v. *Yancey,* 2 Gratt. 73 ; *Bradwell* v. *Spencer,* 16 Ga. 578 ; *Lyon* v. *Northup,* 17 Iowa, 314 ; *Fusilier* v. *Babineau,* 11 La. Ann. 393 ; *Bergen* v. *Williams,* 4 McLean, 125 ; *Fireman's Ins. Co.* v. *McMillan,* 29 Ala. 147 ; apparently overruling cases from that State, cited by opposing counsel. Mrs. Baird, the guardian, bought land, at the sale of her husband's estate, on credit, and gave her notes, with security, for the purchase-money. She took these notes from the administrator years afterwards, and charged herself, as guardian, with this money. The security is not liable for this. *Baugh* v. *Shackleford,* 48 Miss. 255 ; *Buckingham* v. *Walker,* 48 Miss. 609 ; *Elliott* v. *Connell,* 5 S. & M. 91 ; *Hoggatt* v. *Wade,* 10 S. & M. 143 ; *Gayden* v. *Wren,* 1 How. (Miss.) 165 ; 2 Johns. Ch. 204. The surety does not undertake for the private debt of the principal. *Atkins* v. *Baily,* 9 Yerg. 111 ; *United States* v. *Boyd,* 15 Pet. 187 ; *Farrar* v. *United States,* 5 Pet. 373 ; *Haynes* v. *Bridge,* 1 Cold. (Tenn.) 32 ; *Hill* v. *Kemble,* 9 Cal. 71 ; 2 Head, 588.

The land is still liable on this lien. *Wood* v. *Stafford,* 50 Miss. 370. And if the wards do not enforce the lien, the security is discharged. Fell on Guaranties, 525.

No one can hold an interest obtained through the fraud of another. *Bowers* v. *Johnson,* 10 S. & M. 169 ; *Lawrence* v. *Hand,* 23 Miss. 103 ; Burge on Surety, 220. A guardian is agent for the ward. *Grist* v. *Foreham,* 36 Miss. 69. His fraud will de-

feat the claim of the principal. 1 Story Com. § 621; Tyler on Inf. & Cov. 180; *Niles* v. *Anderson*, 5 How. (Miss.) 365.

Hull is not bound for proceeds of land sold in Tennessee. *Andrew's Heirs*, 3 Humph. 592; *Anderson* v. *Falconer*, 34 Miss. 257. She might be bound, but not the surety. *Grist* v. *Foreham, ubi supra.*

Mrs. Baird is not chargeable with hire of slaves in her possession for 1862–64; they were in the enemy's lines, and were worthless, and her charge against herself was a fraud on her security. Wheat. Intern. Law, § 348; *United States* v. *Rice*, 4 Wheat. 277. At all events, the surety is not bound for interest on hire of slaves. *Crump* v. *Gerock*, 40 Miss. 765; *Roach* v. *Jelks*, 40 Miss. 754; *Coffin* v. *Bramlitt*, 42 Miss. 194.

Mrs. Baird could not educate, clothe and support her children without charge, and enable them to recover an amount equal to this expenditure from her surety. She should also have charged commissions. This point is expressly settled in *Fusilier* v. *Babineau*, 11 La. Ann. 393. See Story Eq. §§ 353, 355, 358; Schouler on Domestic Relations, 322–324, 455–459.

Hull is not bound for any interest on any "balance" in the hands of the guardian, unless loaned by order of the court, or retained by the guardian under such order. Code 1857, p. 461; *Hendricks* v. *Huddleston*, 5 S. & M. 422; *Austin* v. *Lamar*, 23 Miss. 189; *Reynolds* v. *Walker*, 29 Miss. 250.

Counsel for the defendant in error reviewed and commented very fully on the authorities cited for the plaintiff in error.

*A. M. Clayton* and *H. W. Walter* also argued the case orally for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

In February, 1856, Mrs. Baird qualified as guardian of her two orphan children, and gave bond as such guardian, with D. H. Crisp as her surety. In May, 1860, she appeared before the Probate Court, which had appointed her guardian, and made application for permission to execute a new bond, "her former security having moved out of this State." Upon this information it was ordered by the court that the guardian should execute another bond, conditioned according

to law for the discharge of her duties as such guardian, with security, to be approved, in the penalty of $10,000 ; and thereupon the said guardian tendered a bond, with William Hull as her surety and co-obligor ; which bond was approved by the court, and ordered to be filed and recorded as a compliance with said order of the court. The guardian made final settlement of her guardianship of one of her wards, and was found indebted to said ward $5,583.14, and ordered to pay over this sum. Failing in which, this action was instituted on the bond executed by the guardian and Hull as aforesaid. Hull, the surety, pleaded separately, presenting several grounds of defence, the chief of which is the alleged invalidity of the bond as having been taken without authority of law.

The Code of 1857, p. 461, art. 145, in force when this bond was executed, provides that " any Probate Court by which a guardian was appointed may, for good and sufficient cause shown, displace such guardian, after having summoned him to appear. And if the court should be informed, or have cause to suspect, that the sureties of a guardian were insufficient at the time the bond was executed, or have become so since, or are in failing or dubious circumstances, it may require and compel such guardian to give additional security ; and, if he should refuse or neglect to do so, he may be displaced and a new guardian appointed." Under this statute the court could require " additional security," *i.e.,* a new security, additional to the former, upon information or cause to suspect, *no matter from what cause,* the original or supervening insufficiency of the sureties. The cause of such insufficiency is left, without restriction or enumeration of grounds, to the court. " Insufficient " is a comprehensive term, embracing every cause or ground the court may regard as amounting to that. The matter is referred to the court, as the protector of wards. " Cause to suspect " the insufficiency of the sureties is enough to authorize the requirement of " additional security ; " therefore no attempt was made to prescribe the particular circumstances in which " additional security " may be required. Removal from this State by the sole surety on a guardian's bond is, undoubtedly, cause to suspect the insufficiency of

such surety. It is expressly made so in case of a public officer, whose surety removes, permanently, from this State ; and this furnishes a strong suggestion to the court in the case of a guardian's surety having removed. If the court, having been informed of the removal from this State of Crisp, the only surety on this guardian's bond, ordered a new bond, and stated the particular cause from which insufficiency of the former surety is a legal conclusion, rather than the conclusion without mention of the cause producing it, this is not a valid objection to the exercise of the lawful power of the court to require a new bond, since *the record shows a state of case which made it the plain duty of the court to order the guardian to give additional security.*

The language of the statute is, "may require and compel such guardian to give additional security." The terms "sureties" and "security" are used in their proper sense, the one as indicating persons, and the other the instrument which secures. If the old bond were executed by new sureties, it would thereby become a new *security ;* and a new bond, distinct from the former, would be a new security. The name is not important. It is the end aimed at which must be considered. The particular way in which new security is given is not material. The term "additional" embraces the idea of joining or uniting one thing to another, so as thereby to form *one aggregate.* We add by bringing things together. "Additional security" is that which, united with or joined to the former, is deemed to make it as an aggregate sufficient as a security from the beginning. The statute contemplates not merely supervening insufficiency, after the grant of guardianship, but "insufficiency at the time the bond was executed." In such case there is no discharge of the former surety, but his liability continues and is supplemented by the "additional security," both constituting security for the faithful discharge of duty by the guardian. The obligation of the guardian is to "faithfully account . . . for the management of the property and estate of the orphan under his care," &c. The additional security must be held to have been entered into with reference to the law in force, which prescribed the duties of

the guardian. It must be assumed that the " additional security " kept the guardian from being displaced, and brought to an immediate accounting for the management of the property of the ward up to that time; and the " additional security " must be held to stand as an indemnity for the discharge of the duties of the guardianship, as a whole, embracing the time before as well as after the date of the " additional security."

Where sureties apprehend danger and seek relief, and a new bond is given, the new bond, by express provision of the statute, art. 145, p. 461, Code of 1857, only operates " for the future, the original sureties being bound for all breaches of the first bond; " but no such provision is made with reference to the case of " additional security " required by the court, not on the application of sureties for relief, but on information or cause to suspect original or supervening insufficiency of sureties. In one case, the original sureties are discharged as to future breaches, and the new bond alone is a security as to them, because the law is so written; but it is not so written as to the other, and the language employed and the nature of the transaction contemplated negative such result.

In *Lewenthall* v. *State*, 51 Miss. 645, it is held that a new bond given by a tax-collector, under § 315 of the Code of 1871, operated for the future only; but there is a plain distinction between the statute under which that bond was given and that under which the bond in this case was executed. The decision in the case cited is rested on the general principle that a bond or other obligation, unless otherwise expressed, is prospective only in its operation, and that the statute under which the bond involved was given does " not contemplate that the new bond covers past delinquencies." The statute under which the bond in the case at bar was given, as above shown, does contemplate that the " additional security " it provides for shall cover the whole guardianship, and, with the former security, shall secure the faithful performance of duty by the guardian. *State* v. *Stewart*, 36 Miss. 652; *Pinkstaff* v. *People*, 59 Ill. 148; *Ennis* v. *Smith*, 14 How. 400, 417; *Phillips* v. *Brazeal*, 14 Ala. 746; *Glenn* v. *Wallace*, 4 Strob. Eq. 149.

The condition of the bond sued on is in the form of the statute, except that it omits the words "with its increase and profits." These words are a mere particularization of part of what is embraced in the general words of the condition, and their omission could not have the effect to lessen the liability on the bond. The condition without these words is broad enough to cover all the additions to the ward's estate, whether arising from nature or the law.

The decree of the Chancery Court on the final account of the guardian is conclusive in this action against the guardian, but is only *prima facie* as to the surety, who was not a party to that suit ; and it is admissible for him to exonerate himself from liability for any charges or omissions in the final account, which were not legal as against him. *Lipscomb* v. *Postell*, 38 Miss. 476 ; *United States* v. *Boyd*, 5 How. 29. This applies to the hire of slaves of the ward in the years 1862, 1863, and 1864, and to the alleged fraudulent omission of the guardian to obtain credit for expenditures for the ward, and her commissions as guardian. These matters should be investigated at the instance of the surety, to ascertain the truth of the case.

Mrs. Baird, the guardian, purchased land at the sale of her husband's real estate in May, 1856, to the amount of $1,904, and gave her notes, with personal security, at one and two years, for this amount to the administrator. Subsequently, these notes were surrendered to Mrs. Baird, upon her receipting, as guardian aforesaid, for so much received by her from said administrator, as distributive share of her wards. For this, as so much money in her hands as guardian, she is clearly chargeable as such ; and she being chargeable, her surety is, for to that end was security required. The cases of *Baughn* v. *Shackleford*, and *Buckingham* v. *Walker*, cited by counsel from 48 Miss. 255 and 609, and *Elliott* v. *Connell*, 5 S. & M. 91, in so far as they have any bearing at all on this question, support the view here announced. It is true that the character of Mrs. Baird, as guardian, was distinct from her individual character, and that she had no right to pay her individual debt with estate of her wards ; but the very object of requiring security on granting letters of guardianship, and making it

proper for the court to require " additional security " on mere cause for suspicion of the insufficiency of the sureties, was to indemnify against the injurious consequences of improper conduct by the guardian in dealing with the estate of the ward.

Her surety is not bound for the guardian's individual debt to anybody except her ward. For that he is bound, and by receipting to the administrator of the estate of the ancestor of her ward for a distributive portion, the guardian became such debtor. The proceeds of real estate in Tennessee, belonging to her wards, came into the hands of the guardian here, and were reported by her to the Probate Court, and charged to her. This money thereby became subject to the jurisdiction of that court, and the guardian was accountable for it to the court, and she being liable, her surety, who became sponsor for her faithfully accounting for the management of the property and estate of her ward, is liable also. That is his engagement. It covers all property, no matter where it came from, how it got here, or when it came into her hands. It was for the surety to keep himself advised of the action of his principal, and, if he saw he had reason to apprehend danger and desired to be discharged, he had his remedy. *Martin* v. *Stevens*, 30 Miss. 159; *Jefferson* v. *Glover*, 46 Miss. 510.

The cases in which a guardian is chargeable with interest are well settled by former decisions in this State, and with the announcement that, whenever the guardian is chargeable with interest, the surety is bound for such charge, there will be no difficulty in disposing of this question in the case. It results from the foregoing views that the demurrer was properly sustained to the fifth and seventh pleas of Hull, was improperly overruled as to the first, second, third, fourth, and sixth pleas, and improperly extended back to the amended declaration; and that the demurrer to the first and second pleas to the amended declaration was improperly overruled; but as to the third plea to said amended declaration, said demurrer was properly overruled. Therefore, the judgment is affirmed as to said fifth and seventh pleas to the original declaration, and said third plea to said amended declaration, and is reversed as to said other pleas, and as to said amended

declaration; and judgment will be entered here in accordance with this opinion, with leave to the defendant below to plead over, and to the plaintiff to reply to all of his pleas to which demurrer is not sustained.